THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CHRISTOPHER J. HAITZ, Appellant.

Fourth Department, December 8, 1978

**APPEARANCES OF COUNSEL**

*Michael T. Welsh* for appellant.

*Ronald L. Fancher, District Attorney (D. Michael Murray* of counsel), for respondent.

## OPINION OF THE COURT

SCHNEPP, J.

Defendant appeals from a judgment of County Court, Genesee County, convicting him after a jury trial of driving while intoxicated. The sole question presented for our determination is whether section 1194 of the Vehicle and Traffic Law, which permits the admission at trial of testimony of a defendant's refusal to submit to a breathalyzer test for intoxication, is unconstitutional as violative of the privilege against self incrimination.

On September 23, 1976 Trooper Michael H. Schrader of the New York State Police arrested the defendant, Christopher J. Haitz, on Route 5 in Town of Batavia for driving while intoxicated. After advising him of his *Miranda* rights, Schrader asked the defendant to submit to a breathalyzer test and warned him that his failure or refusal to submit to the chemical test may result in the revocation of his driver's license (see Vehicle and Traffic Law, § 1194). The defendant refused to take any chemical test. At trial, prosecution witnesses testified to his refusal, and comment on the refusal was made by the prosecution and by the court in its charge to the jury.

Section 1194 of the Vehicle and Traffic Law provides that the operator of a motor vehicle "shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva" to determine the alcoholic content of his blood, and if the person refuses to submit to the test, "the test shall not be given" at the expense of the revocation of his license to operate a motor vehicle. It further provides that "[e]vidence of a refusal to submit to such chemical test shall be admissible in any trial, proceeding or hearing * * * but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in his refusal".

■ The United States Supreme Court in a criminal case involving a defendant charged with driving an automobile while under the influence of intoxicating liquor held that the Fifth Amendment privilege against self incrimination extends only to communicative or testimonial evidence and upheld the constitutionality of the involuntary seizure of blood, when the

blood is taken upon probable cause and in accordance with recognized medical practice *(Schmerber v California,* 384 US 757). A chemical test, although an incriminating product of compulsion, constitutes real or physical evidence and as the court pointed out in *Schmerber,* "[n]ot even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis" *(Schmerber v California, supra,* p 765).

However, the *Schmerber* court recognized that incriminating evidence derived from the accused's refusal may be an unavoidable by-product of the compulsion to take the test "especially for an individual who fears the extraction or opposes it on religious grounds". It concluded that in these situations "the State may have to forgo the advantage of any *testimonial* products of administering the test—products which would fall within the privilege. Indeed, there may be circumstances in which the pain, danger, or severity of an operation would almost inevitably cause a person to prefer confession to undergoing the 'search' " *(Schmerber v California, supra,* p 765, n 9). In these limited situations the State's action may arguably be described as coercive. But, no religious scruple or claim of pain or danger can seriously be alleged as a reason to refuse a breathalyzer test, which requires only a sample of the air expelled from the accused's lungs. The physical and psychological disturbance of the individual involved in obtaining a breath sample is significantly less than that involved in extracting a blood sample, an evidence-gathering technique approved in *Schmerber.*

The court also noted that the admissibility of evidence of refusal to submit to a breathalyzer test is governed by "general Fifth Amendment principles" *(Schmerber v California, supra,* p 765, n 9). These principles, however, are no barrier to the admission of evidence of defendant's refusal to take the chemical test.

Traditionally, evidence described as "testimonial" or "communicative" is protected by the Fifth Amendment, and "real" or "physical" evidence is not. In the instant case, however, these categories do not further any meaningful analysis of the issue of the applicability of the Fifth Amendment, although some courts have adhered to the credo that a "[r]efusal is, by definition, communication" and therefore "within the protective cloak of the Fifth Amendment" *(People v Rodriguez,* 80 Misc 2d 1060, 1063; *People v Thomas,* 92 Misc 2d 992). As one

court thoughtfully observed, the mechanical application of these "labels" can lead to conclusions which "strain rationality" *(People v Mosher,* 93 Misc 2d 179). "If the act of refusal does not violate the right against self incrimination, then a statement to that effect can be no more serious. A statement cannot be a greater act of self incrimination than the conduct itself" *(People v Mosher, supra,* pp 180-181). Clearly, defendant's refusal has features of both "testimonial" and "real" evidence.

A suspect's refusal to take a chemical test which the State has a right to obtain does not evoke "the spirit and history of the Fifth Amendment" *(Schmerber v California, supra,* p 764). The Fifth Amendment prohibits compelling a person in a criminal case to be a witness against himself and using physical or moral compulsion to exhort communications from him. Section 1194 does not submerge the values which the Fifth Amendment is designed to protect by obtaining evidence against the defendant resulting from the defendant's custodial interrogation "by the cruel, simple expedient of compelling it from his own mouth" *(Miranda v Arizona,* 384 US 436, 460), but rather seeks to obtain physical evidence in the form of test results which the State has a right to do. The exercise of a clear State right to obtain these chemical tests is not compulsion. The defendant may choose to refuse to take the test in the exercise of his own will. The defendant's right of refusal, however, is a qualified statutory right designed to avoid the unpleasantness connected with administering a chemical test on an unwilling subject (see *People v Paddock,* 29 NY2d 504, 506 [JASEN, J., concurring opn]). In short, the defendant is merely selecting a statutory option when he refuses to take the chemical test.

The admission of defendant's refusal is not a penalty exacted for his exercise of a constitutional right, for he has no constitutional privilege to refuse to take the test *(Schmerber v California, supra).* The instant case is unlike other Fifth Amendment cases where the accused claims a recognized constitutional right (cf. *Griffin v California,* 380 US 609). The Fifth Amendment privilege to remain silent applies to the defendant's right not to be incriminated by testimony compelled from him. Clearly, prosecutorial comment may not be made on an accused's exercise of his constitutional right to remain silent and his silence may not be considered evidence of guilt. To impose a penalty upon an accused for exercising

his constitutional right is to undermine the right by making its assertion costly. However, the privilege does not attach when he possesses no constitutional right to deny the State this physical evidence. Here, the issue focuses on the accused's refusal to take a chemical test, not on his refusal to speak. Since the defendant is not asserting a constitutional right when he refuses the test, there is no foundation on which to build a Fifth Amendment argument.

Furthermore, it has long been recognized that the conduct of the accused indicative of a guilty mind has been admissible against him on the theory that an inference of guilt may be drawn from consciousness of guilt (Richardson, Evidence [10th ed], § 167). Evidence of the defendant's refusal to blow air into a bag is conduct which may be admitted on the same principle that evidence of an accused's flight or concealment is admissible to show consciousness of guilt *(People v Fiorentino,* 197 NY 560, 567; see, also, *People v Reddy,* 261 NY 479). The defendant's refusal to submit to the test constitutes the destruction of incriminating evidence because of the rapid rate at which the body eliminates alcohol from the blood.[1] There is no real difference between a defendant who flees to avoid or escape custody and one who, although in custody, wrongfully withholds his body (the source of incriminating evidence) from examination. The inference of guilt is not illogical or unjustified. As Judge JASEN points out in his concurring opinion in *People v Paddock* (29 NY2d 504, 506), "It should be quite obvious that the primary reason for a refusal to submit to a chemical test is that a person fears its results". Even the Legislature has adopted this inference; the statute itself equates a refusal with guilt by revoking the driver's license. "To forbid comment upon such a refusal seems unduly restrictive of legislative intent and unnecessarily prevents the use of competent and probative evidence [citation omitted]" *(People v Paddock, supra,* p 506).

■ Although the defendant here was given his *Miranda* warnings, it is noted that the New York Court of Appeals has held, as a logical extension of *Schmerber,* that a person is not entitled to the warnings required by *Miranda v Arizona* (384 US 436, *supra)* prior to the extraction of blood *(People v Craft,* 28 NY2d 274). It appears equally logical that the failure to

---

1. The United States Supreme Court took judicial notice of this fact in *Schmerber v California (supra,* p 770).

apprise a subject of his *Miranda* rights would not bar the admission into evidence of his refusal to take a chemical test.

■ The blood alcohol test and the breath test for alcoholic absorption are alternate means for determining the percentage of alcohol in the blood.[2] The value of objective scientific data of intoxication to supplement the fallible observations by humans of behavior seemingly symptomatic of intoxication cannot be disputed. Moreover, the average juror of today is familiar with breathalyzer tests and expects that some chemical test results be presented when a defendant is charged with driving while intoxicated. The absence of this evidence can only lead to jury speculation and confusion. In view of the excessive loss of life and property caused by inebriated drivers; an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and prevention (see *Breithaupt v Abram,* 352 US 432, 439). The admission of refusal evidence at trial is in accordance with the current national trend (see 2 Erwin, Defense of Drunk Driving Cases [3d ed], § 31.03 *et seq.;* Ann. 87 ALR2d 370).

The trial court properly admitted evidence of defendant's refusal to take a breathalyzer test. The judgment should, therefore, be affirmed.

MARSH, P. J., MOULE, SIMONS and WITMER, JJ., concur.

Judgment unanimously affirmed.

---

2. See *People v Kovacik* (205 Misc 275, 282-290) for a discussion of the development of, and scientific basis for, the breath testing technique.