*446 OPINION OF THE COURT
Mary McGowan Davis, J.
Defendant Alejandro Rosario seeks preclusion of breathalyzer test results obtained as a consequence of his arrest, on March 7, 1986, for driving while intoxicated, in violation of Vehicle and Traffic Law § 1192 (2) and (3).[1] His motion, made pursuant to CPL 710.20, 710.30 and Vehicle and Traffic Law § 1194, raises issues respecting the extent to which the People must establish, as a condition precedent to introducing breathalyzer test results at trial, defendant’s consent to take such a breathalyzer exam.
A hearing with respect to the circumstances surrounding defendant’s arrest for driving while intoxicated was conducted before me on December 9, 1986, at which Police Officers Gerald Attanasio and William Kowalski testified. Based upon their credible testimony as recorded in the transcript of the proceedings and on the memoranda of law submitted by both parties, I make the following findings of fact and conclusions of law:
FINDINGS OF FACT
On the evening of March 7, 1986, Gerald Attanasio, a police officer assigned to the Intoxicated Driver Apprehension Unit, Highway Patrol Unit One, was on patrol in a marked radio car. At about 7:00 p.m., he stopped for a red light at the intersection of Tiffany Street and Southern Boulevard in The Bronx. When the light turned green, Officer Attanasio remarked that the car in front of him, a blue Chevy, remained stopped at the light for 8 to 10 seconds before proceeding on through the intersection. The officer viewed this delay as somewhat "unusual”,[2] since at the time there were no pedestrians or other vehicles blocking the street. From his vantage point, approximately five feet behind the blue Chevy, Officer Attanasio noticed that the vehicle bore a temporary license plate from the State of Delaware announcing an expiration date of November 6, 1985. Since the temporary license appeared to have expired four months earlier, Officer Attanasio activated his car light and siren and motioned to the driver— later identified as defendant Alejandro Rosario — to pull over *447 beyond the intersection. Defendant complied with the officer’s directive and Officer Attanasio approached the blue car. According to the officer, when he asked defendant for his license and registration, he noticed that defendant "had bloodshot and watery eyes and he said something to me, incoherently and slurred * * * I knew it to be Spanish but very slurred”. The officer also smelled alcohol on defendant’s breath and remarked that when defendant alighted from his car, he appeared to be "unsteady” on his feet.
Officer Attanasio repeated his request for defendant’s license and registration in Spanish; defendant was unable to produce anything other than an expired registration. The officer then directed defendant to blow into the Alco-Sensor device. When the device registered a reading of .11, the officer arrested defendant for driving while intoxicated.
After placing defendant under arrest, Officer Attanasio gave him the Miranda warnings in English and transported him to the 41st Precinct for further investigation and booking. Sometime later that evening, the officer accompanied defendant to the Highway Patrol Precinct Number One, where the breathalyzer test was performed.
Upon arriving at Highway One, at approximately 8:00 p.m., Officer Attanasio delivered defendant into the custody of Police Officer William Kowalski, the chemical technician responsible for administering the breathalyzer exam. In response to Officer Kowalski’s inquiry whether defendant understood English sufficiently "to understand his rights as an intoxicated driver]”, Officer Attanasio indicated that it would be necessary to use the "Spanish tape”.
According to Officer Kowalski — whose own command of Spanish is "very poor” — there is a Spanish video cassette at Highway One that is routinely used to advise Spanish-speaking defendants of their rights with respect to the administration of breathalyzer tests. Officer Kowalski put this tape in the video cassette recorder, sat the defendant down directly in front of the television set, turned up the volume, and pointed to the screen. Officer Kowalski waited while defendant viewed the three-minute tape, which depicted a "Spanish interpreter sitting in a room that we do the test in, and he’s just reading from the script”. After the tape was over, Officer Kowalski switched off the machine, turned to defendant, and inquired in Spanish, "Are you going to participate in this chemical test, yes or no?” to which defendant responded, "Si.” According to *448 the officer, this response "indicated to me that he saw the tape and understood what it said, and he was going to take the test that the interpreter offered him.” Officer Kowalski then escorted defendant to a nearby cubicle and, with hand motions, instructed him to blow into the mouthpiece.
The officer specified that defendant cooperated fully in this procedure and never gave any sign that he did not understand the tape, or that he did not wish either to watch the tape or to blow into the breathalyzer. Because of the language barrier, defendant was not given the customary coordination tests, nor was an intoxicated drivers’ report completed in this case. No videotape was made of defendant’s consent to take the breathalyzer, because there were no videotapes available in the precinct that evening.
DISCUSSION
Defendant claims that the breathalyzer test results — and his affirmative agreement to participate in the test — must be precluded because he was not given sufficient warnings of his rights to remain silent and to refuse administration of the breathalyzer exam. Specifically, defendant urges that, even though there is no evidence that he refused to take the breathalyzer test, the People must establish, as a condition precedent to admission of the breathalyzer results at trial, that the warnings set forth in Vehicle and Traffic Law § 1194 (2) were given to him in "clear and unequivocal” language and that he "knowingly waived his right to refuse the breathalyzer test”. Defendant also seeks suppression of the breathalyzer results on Fourth Amendment grounds, protesting that the initial stop of his vehicle was unsupported by reasonable cause to believe that he had committed a traffic infraction.
The People counter that the statutory safeguards mandating that a defendant be advised, "in clear and unequivocal language”, of his right to refuse a chemical test and of the consequences of that refusal (see, Vehicle and Traffic Law § 1194 [4]) were not triggered in this case, since defendant concededly agreed to take the breathalyzer test when invited to do so. They maintain further that defendant’s one-word expression of consent to give a breath sample is not a testimonial statement protected by the Fifth Amendment; therefore, the police officer’s evident failure to apprise defendant of his Miranda warnings, in language the Spanish-speaking defendant understood, does not bar admission of this evidence at *449 trial. Finally, the People assert that the stop of defendant’s vehicle was reasonable and accorded fully with the Fourth Amendment’s proscription against arbitrary seizures.
For the reasons detailed below, which were announced in an oral opinion rendered April 2, 1987, this court concludes that the People have indeed met their burden of establishing the legality of the police conduct in this case. Accordingly, defendant’s motion to preclude the breathalyzer test results — and his statement of intent to take the test — is denied.
A. Fifth Amendment Claims
Preliminarily, it is necessary to address defendant’s insistence on denominating this a "'Huntley” hearing — involving alleged infringements of his Fifth Amendment privilege against self-incrimination — notwithstanding the People’s representation that no statements, other than defendant’s one-word agreement to take the breathalyzer test, are to be offered at trial. Plainly, the People are correct in asserting that neither the act of blowing into the breathalyzer itself— nor defendant’s verbal assent to take the test — is a testimonial communication protected by the Federal and State constitutional guarantees against compelled self-incrimination (US Const 5th, 14th Amends; NY Const, art I, § 6). Indeed, the Court of Appeals, in People v Hager (69 NY2d 141, 142 [1987]), has recently reaffirmed the established principle that evidence is " 'testimonial or communicative’ ”, and therefore shielded from compelled disclosure by the State, only when it reveals a person’s subjective "knowledge or thought processes” (supra, 69 NY2d, at 142). Unlike spoken or written testimony, or physical evidence such as a " 'nod or a head-shake’ ”, the sobriety test at issue here — blowing into a breathalyzer — in no way reveals what the defendant is thinking; rather, the significance of such evidence lies in the physical act itself, because the body’s response to the chemical test is "inherently different from the response * * * of a sober person.” (People v Boudreau, 115 AD2d 652, 654 [2d Dept 1985]; see, e.g., Schmerber v California, 384 US 757, 761, n 5 [1966]; People v Craft, 28 NY2d 274, 277 [1971] [no Miranda warnings necessary prior to withdrawal of blood for chemical analysis]; People v Hager, supra, 69 NY2d, at 142; People v Sanchez, 134 Misc 2d 726, 727 [Crim Ct, NY County 1987] [defendant not entitled to Miranda warnings before physical coordination tests]; People v Shaw, 133 Misc 2d 862, 863 [Oneida County Ct, 1986] [no Miranda warnings required prior to breathalyzer test]; People *450 v Graser, 90 Misc 2d 219, 225 [Town Ct, Erie County 1977] ["motorist’s breath” not a communication protected by the Fifth Amendment].) Accordingly, the police were not obliged to give defendant Miranda warnings prior to administration of the breathalyzer exam, and his evident failure to appreciate the import of the warnings concededly read to him in English by Officer Attanasio does not bar admission of this evidence at trial.
Likewise, evidence of defendant’s verbal agreement to take the breathalyzer test may be admitted at trial, notwithstanding the apparent inadequacy of the Miranda warnings. As noted in People v Haitz (65 AD2d 172, 174 [4th Dept 1978]), where the identical issue was raised in the context of a defendant’s stated refusal to take a breathalyzer exam, " 'If the act of refusal does not violate the right against self-incrimination, then a statement to that effect can be no more serious. A statement cannot be a greater act of self incrimination than the conduct itself ”. (People v Haitz, supra, 65 AD2d, at 175, quoting People v Mosher, 93 Misc 2d 179, 180-181 [Webster Town Ct, Monroe County 1978]; see also, Matter of Hoffman v Melton, 81 AD2d 709, 710 [3d Dept 1981].) Since the State may properly require a person suspected of driving while intoxicated to submit to chemical testing without infringing on his Fifth Amendment privilege, evidence that defendant manifested verbally his consent to take such a test is admissible at trial, regardless whether sufficient Miranda warnings preceded this oral declaration. (See, People v Kates, 53 NY2d 591, 596 [1981]; see also, People v Thomas, 46 NY2d 100, 110 [1978].)
B. Insufficiency of the Vehicle and Traffic Law Warnings
Defendant’s claim that the breathalyzer test results must be precluded because he was not adequately apprised of his statutory right to refuse to submit to chemical testing is similarly unavailing. Contrary to defendant’s contention, the People have no obligation to establish, as a condition precedent to admission of breathalyzer test results at trial, that defendant affirmatively consented to take the breathalyzer test. Rather, under subdivision (1) of section 1194 of the Vehicle and Traffic Law, as construed by the Court of Appeals in People v Kates (supra, 53 NY2d, at 596), such consent is deemed to have been given when defendant used the highway, as long as the People can demonstrate that the breathalyzer test was administered at the direction of a police officer who *451 had "reasonable grounds” to believe defendant was driving in violation of any subdivision of Vehicle and Traffic Law § 1192, and that the test was given within two hours either of defendant’s arrest for driving while intoxicated or of a breath screening test. (Vehicle and Traffic Law § 1194 [1]; People v Moselle, 57 NY2d 97, 104-105 [1982]; People v Hall, 91 AD2d 1002, 1003 [2d Dept 1983]; People v Wade, 118 Misc 2d 330, 336 [Broome County Ct 1983].) Where the police follow these procedural requirements, chemical evidence obtained from a defendant will be admissible at a trial, regardless whether or not he affirmatively agreed to submit to a chemical test. (People, v Wade, supra, 118 Misc 2d, at 335-337.) Indeed, if the statutory prerequisites are met, "It is immaterial whether the suspect/patient knows what is transpiring, understands it, or consents to it — so long as he/she does not refuse” (supra, at 336).
Here, plainly, the police complied with the mandatory requirements set forth in Vehicle and Traffic Law § 1194 (1). Indeed, defendant does not seriously dispute the proposition that Officer Attanasio acted "reasonably” in arresting him for driving while intoxicated based on the police officer’s observation that defendant’s eyes were "bloodshot and watery”, that his speech was "incoherent” and "slurred”, that his breath smelled of alcohol, and that upon alighting from his car, defendant appeared "unsteady on his feet”. Clearly, at this point the officer — who had himself seen defendant operating the vehicle — had probable cause to believe defendant had been driving while under the influence of alcohol, thereby justifying administration of the Alco-Sensor breath test in order to further establish this fact. (People v Brockum, 88 AD2d 697 [3d Dept 1982], citing Schmerber v California, 384 US 757, supra; People v Kates, supra, 53 NY2d, at 594-595.) Moreover, it is uncontroverted that both the breathalyzer exam and the Alco-Sensor test were administered well within two hours of the initial stop of the vehicle.
What is in dispute is defendant’s insistence that the People must establish, as a further precondition to the introduction of the breathalyzer results at trial, that the warnings prescribed in Vehicle and Traffic Law § 1194 (2) were administered to him in "clear and unequivocal” language and that he knowingly waived his statutory right to decline a chemical test of his breath. The Vehicle and Traffic Law warnings to which defendant refers provide that a defendant may refuse to take a breathalyzer examination when asked to do so, but such *452 refusal will result in immediate mandatory suspension and possible revocation of his driver’s license (Vehicle and Traffic Law § 1194 [2]), and can be introduced as evidence of consciousness of guilt at a subsequent trial (Vehicle and Traffic Law § 1194 [4]).
It is unnecessary to decide here whether the People must demonstrate, in every case presenting issues respecting chemical testing, that the defendant received adequate notice of his statutory "refusal” rights — irrespective of whether he was conscious or unconscious, or agreed or declined to submit to testing. (Compare, e.g., People v Moselle, supra, 57 NY2d, at 104-105; People v Stisi, 93 AD2d 951, 952 [3d Dept 1983]; People v Wade, supra, 118 Misc 2d, at 335-337 [arrest/request/ advice procedure necessary prerequisite for admission of chemical test results in Vehicle and Traffic Law cases], with People v Kates, supra, 53 NY2d, at 595; People v Hall, supra, 91 AD2d, at 1003; People v Kelty, 95 Misc 2d 246, 247-248 [Dist Ct, Nassau County 1978] [no need to show that defendant was given opportunity to revoke deemed consent to testing].) Notwithstanding the People’s failure to document at the hearing the precise scope of the warnings given defendant Rosario because of the unavailability of the Spanish-language tape, the People did meet their burden of going forward to show that warnings were indeed administered to defendant in Spanish, and that he gave every indication of appreciating the import of the message he viewed on the tape and acquiesced readily in Officer Kowalski’s invitation to submit to a test. As discussed above, it is well established that breathalyzer test results are physical, not testimonial, evidence; thus, defendant’s motion to preclude the breathalyzer results under Vehicle and Traffic Law § 1194 is properly analogized to a motion to suppress physical evidence, rather than to a motion to suppress statements as urged by the defendant. (See, People v Thomas, 121 AD2d 73, 77-78 [4th Dept 1986].) This difference is significant. Unlike the latter proceeding, where the onus is on the People to establish voluntariness beyond a reasonable doubt, the ultimate burden of proving that physical evidence should be suppressed is placed on the defendant, who must show the unreasonableness of the search or seizure by a preponderance of the evidence. (People v Di Stefano, 38 NY2d 640, 652 [1976]; People v Berrios, 28 NY2d 361, 367 [1971].) Defendant did not carry such a burden of persuasion here, for he did not gainsay Officer Kowalski’s testimony that he did, in fact, watch a Spanish-language tape of the Vehicle and Traffic *453 Law warnings and responded unhesitatingly to the officer’s subsequent suggestion that he participate in the test.
Accordingly, since it is uncontroverted that the statutory prerequisites triggering the authorization for chemical testing under the implied consent statute (Vehicle and Traffic Law § 1194 [1]) were satisfied by defendant’s lawful arrest for driving while intoxicated within two hours prior to the breathalyzer exam, and since there was no evidence to suggest that defendant refused to take the test after being afforded an opportunity to do so, the requisite foundation for admission of the breathalyzer test results has been established. Defendant’s voluntary consent to submit to the chemical test simply renders academic his argument that the Vehicle and Traffic Law § 1194 (2) "refusal” warnings were inadequate.
C. Legality of Initial Stop
Finally, defendant rather perfunctorily contends that the initial stop of his vehicle was unsupported by reasonable cause to believe that he committed a traffic offense. This argument is unavailing, for it is well settled that a police officer may lawfully stop a vehicle for purposes of investigating the observed commission of a traffic infraction (People v Ingle, 36 NY2d 413, 420 [1975]; People v Velazquez, 104 AD2d 761, 762 [1st Dept 1984], affd 64 NY2d 1118 [1985]), and may require the driver to display his license, registration, and insurance card. (People v Ellis, 62 NY2d 393 [1984]; People v Young, 81 AD2d 843, 844 [2d Dept 1981], appeal dismissed 54 NY2d 1027 [1981]; People v Cruz, 34 NY2d 362 [1974], rearg granted and opn amended 35 NY2d 708 [1974].) Police Officer Attanasio plainly had "reasonable suspicion” to believe that defendant had committed a traffic violation, based on his observation— from a vantage point immediately behind defendant’s stationary vehicle — that defendant’s car bore an expired temporary license plate from the State of Delaware. The officer was therefore justified in stopping defendant’s car in order to question him as to the expired plate. (Pennsylvania v Mimms, 434 US 106, 112 [1977]; People v Crutchfield, 111 AD2d 346, 347 [2d Dept 1985]; People v Rosario, 94 AD2d 329, 332 [2d Dept 1983].) Since the stop met constitutional standards, the breathalyzer results "seized” as a consequence of that stop may be admitted at trial.
CONCLUSION
In sum, the People have demonstrated the legality of the *454 police conduct at issue here by showing, through credible uncontradicted testimony, that (1) defendant’s arrest for driving while intoxicated was supported by reasonable suspicion; (2) that defendant was asked to submit to a breathalyzer examination within two hours of his arrest; (3) that before undergoing the test he viewed a Spanish-language tape containing the warnings prescribed by Vehicle and Traffic Law § 1194 (2); and (4) that he demonstrated his understanding of those warnings and his willingness to be tested by agreeing, both verbally and physically, to blow into the breathalyzer. In the absence of any showing by defendant that he expressed reluctance or refusal to participate in the proffered test (see, People v Kelty, supra, 95 Misc 2d, at 247) he has failed to meet his burden of establishing that the police acted unreasonably in this case. Accordingly, his motion to preclude the breathalyzer test results — and his one-word declaration of assent to submit to the examination — must be denied.

. Defendant was also charged with violating section 509 (1) and section 401 (1) of the Vehicle and Traffic Law.

. Quotations are from the pages of the hearing minutes (passim).