OPINION OF THE COURT
Joseph Anthony Grosso, J.
The defendant, charged with Vehicle and Traffic Law § 1192 (1), moves for an order suppressing statements and for an order suppressing the results of a breathalyzer examination.
A hearing on these issues was held on June 20, 1995 and one witness, Police Officer Kevin Dunn, testified. I find Officer Dunn’s testimony to be candid, forthright and consistent and find as follows:
On May 6, 1995 at approximately 1:30 a.m., Officer Dunn was assigned to a so-called DWI checkpoint at Steinway Street and 34th Avenue in Queens County. Pursuant to the procedures established for this checkpoint, every vehicle was stopped and every driver was asked if he or she had been drinking. If the driver answered affirmatively, he or she was asked to submit to an alco-sensor field sobriety test. At about 1:30 a.m., the defendant entered the checkpoint area and in response to the officer’s question indicated that he had been drinking. At this time, the defendant exhibited the classic signs of intoxication, slurred speech, bloodshot watery eyes, an odor of alcohol and unsteadiness on his feet. The defendant agreed to submit to an alco-sensor test and the results indicated a blood alcohol content of 0.15 of 1%. This test was readministered to the defendant approximately nine minutes later with identical results and the defendant was then arrested and taken to the 114th Precinct where pedigree information in connection with the arrest was taken. While en route to the 114th Precinct, the defendant asked Officer Dunn what was going to happen. The officer told the defendant that he would be given a breathalyzer examination and that if his blood alcohol content registered 0.06 of 1% or less, that he would be released; that if he refused to submit to the breathalyzer test that his license would be revoked; that if he took the breathalyzer examination and his blood alcohol content registered 0.10 of 1% or greater, that his license would be suspended. This exchange occurred somewhere between 1:40 a.m. and 2:00 a.m. (A similar exchange between Officer Dunn and the defendant took place at approximately 4:15 a.m., immedi *641 ately before the defendant took the breathalyzer examination.) Thereafter, the defendant was transported to the Intoxicated Driver Testing Unit (IDTU) at the 112th Precinct. It was here that Officer Dunn advised the defendant of his Miranda rights prior to questioning him from the IDTU questionnaire. Each and every Miranda warning was given and acknowledged by the defendant who voluntarily agreed to answer questions.
At some point after the IDTU questionnaire was completed by Officer Dunn, the defendant was asked if he would submit to a breathalyzer examination. Once again, the three alternatives described above were stated to the defendant by Officer Dunn. The defendant, without any apparent hesitation or protest, took the breathalyzer test at 4:15 a.m. The results showed 0.09 of 1% of alcohol in the blood. The People concede that the breathalyzer examination was administered more than two hours from the defendant’s arrest. The defendant was next taken to Central Booking and en route indicated to Officer Dunn that he had consumed about 10 beers that evening and not the two beers as he had previously indicated on the IDTU questionnaire. The People concede that notice of this statement was never provided to defense counsel pursuant to CPL 710.30 (1) (a).
I conclude that the DWI checkpoint and the manner in which it was effected to be a proper exercise of the police power (see, e.g., People v John BB, 56 NY2d 482 [1982]). Accordingly, the stop of the defendant was proper. Officer Dunn’s request that the defendant submit to an alco-sensor test was proper in view of the defendant’s response to the officer’s preliminary inquiry. The alco-sensor results provided probable cause to arrest the defendant.
With respect to the statements attributed to the defendant, I conclude that those memorialized in the IDTU questionnaire were freely and voluntarily made following the full administration and acknowledgement of the Miranda warnings. Accordingly, these statements are admissible. With respect to the statement attributed to the defendant while being transported from the 112th Precinct to the Central Booking facility, the People are precluded from introducing this statement at trial. This statement was not contained with the requisite specificity in the CPL 710.30 (1) (a) notice and good cause for the failure to do so was not provided (see, People v O’Doherty, 70 NY2d 479 [1987]; People v Lopez, 84 NY2d 425 [1994]).
The main issue in this case, whether chemical test results *642 should be admissible at trial when the test was administered after two hours of arrest, was recently addressed by the Court of Appeals. In People v Atkins (85 NY2d 1007) by a 4-3 decision the Court apparently held that where a defendant expressly and voluntarily consents to submit to a chemical test that the so-called "two hour rule” of Vehicle and Traffic Law § 1194 (2) is inapplicable. It is unclear whether this holding will be limited to the facts presented (consent to submit to the test within two hours of arrest — administration of the test after two hours of arrest) or whether, as the dissent strongly suggests, this holding will apply to all situations where an individual expressly consents to take a chemical test regardless of when the consent occurs. It appears to me that the majority decision has, in effect, written out of Vehicle and Traffic Law § 1194 (2) the "two hour rule” in cases of express consent.
While this decision resolves an issue that has spawned much litigation in the local criminal courts throughout the State in recent years, it invites litigation in areas that arise daily in our courts. Some of these issues are:
(a) With respect to sufficiency of misdemeanor pleadings, must express consent be pleaded in a Vehicle and Traffic Law § 1192 (2) count where chemical test was administered beyond two hours of arrest?
(b) With respect to the suspension of a defendant’s license due to an excessive blood alcohol content pending prosecution (Vehicle and Traffic Law § 1193 [2] [e] [7]), should the license be suspended where the chemical test was administered beyond two hours?
(c) With respect to the statutory probative values assigned to certain blood alcohol content levels in Vehicle and Traffic Law § 1195, are these values still viable in situations where the chemical test was administered after two hours of the defendant’s arrest?
(d) With respect to evidence of a defendant’s refusal to submit to a chemical test, will such evidence be admissible if the refusal occurs beyond two hours of a defendant’s arrest? (Vehicle and Traffic Law § 1194 [2] [c];contrast, People v Brol, 81 AD2d 739 [4th Dept 1981], and People v Morales, 161 Misc 2d 128 [Grim Ct, Kings County 1994].)
(e) With respect to the issue presented in this case, what standards should we, as trial level court, apply in determining whether an individual expressly and voluntarily consents to *643 submit to a chemical test more than two hours from the point of arrest?
In examining the procedures contained in Vehicle and Traffic Law § 1194, vis-á-vis current case law, I am led to conclude that a traditional Fourth Amendment analysis of "consent searches/seizures” is inapplicable to situations where a chemical test is consented to after two hours of arrest.
It seems clear that the taking of a breath sample, as was done here, is a search within the meaning of the Fourth Amendment (see, Skinner v Railway Labor Executives’ Assn., 489 US 602 [1989]). However, in exchange for the privilege of being licensed to drive in this State, every motorist in this State is deemed to have given advance consent to submit to such a "search” where certain conditions precedent are present (see, Vehicle and Traffic Law § 1194 [1], [2] [a] [1], [2]). Since the privilege to drive is statutorily created concomitantly with a deemed consent provision, there is no constitutional right for an individual driver in this State where the conditions precedent in Vehicle and Traffic Law § 1194 (1) and (2) are present, to refuse to submit to a police requested chemical test (see, People v Shaw, 72 NY2d 1032 [1988]; People v Goodell, 79 NY2d 869 [1992]; People v Thomas, 46 NY2d 100 [1978]; People v Kates, 53 NY2d 591 [1981]). Accordingly, since a statutory rather than a constitutional right is implicated in this type of case, it is not necessary to establish an express and voluntary consent beyond a reasonable doubt. Rather, I believe, as was suggested in People v Serrano (142 Misc 2d 1087, 1092, nn 10, 11 [Grim Ct, Kings County 1989]), that the appropriate burden may be greater than "clear and convincing” evidence but less than evidence "beyond a reasonable doubt.” (See also, People v Dillin, 150 Misc 2d 311 [Grim Ct, NY County 1991].)
It is clear that consent involves a person’s knowing choice from all of the factors present in each case (see, Schneckloth v Bustamonte, 412 US 218 [1973]). Factors for the court’s consideration in determining whether consent was present in relationship of the characteristics of the defendant and details of the interrogation, including the age and intelligence of the defendant, the administration of the Miranda warnings, the length of the detention, physical threats, abuse or isolation, reliance upon false promises and the manner itself in which the consent occurred, that is, a reluctant, limited consent or a self-prompted spontaneous consent (see, e.g., United States v Chaidez, 906 F2d 377 [8th Cir 1990]).
*644 In the context of Vehicle and Traffic Law breathalyzer cases, there is no obligation to advise an individual of any rights prior to the administration of a breathalyzer examination (see, People v Rosario, 136 Misc 2d 445 [Grim Ct, Bronx County 1987]). There is no obligation to inform an individual of any right to refuse to submit to a breathalyzer examination (see, e.g., People v Artis, 201 AD2d 488 [2d Dept 1994]; People v Sheridan, 192 AD2d 1057 [4th Dept 1993]). By logical extension through Atkins (supra) then, there is no obligation on the part of law enforcement officials to advise a suspect of anything regarding the administration of a breathalyzer examination even when the request to submit to a search test occurs beyond two hours of arrest. Thus, it appears to me that a simple request to submit to a breathalyzer examination without more can result in a voluntary consent as long as there is no express or implied coercion by law enforcement officials, no material misrepresentation of fact, to induce the consent and no facts to suggest that any law enforcement officials in securing an individual’s consent acted in a manner so fundamentally unfair as to constitute a due process violation as to negate any consent.
I hold that to establish express and voluntary consent the burden is upon the prosecutor to establish consent by clear and positive evidence (see, e.g., People v Corbin, 201 AD2d 359 [1st Dept 1994]). Once this burden is shouldered by the People, the defendant must bear some burden in negating consent. This, can be accomplished either through the cross-examinatian of the People’s witnesses or the presentation of a defense case.
Applying these principles to the facts of this case I conclude that the People have met their burden of establishing the defendant’s consent by clear and positive evidence.
Although the defendant’s consent occurred in a custodial environment, the atmosphere was not overbearing on his will. The defendant was not handcuffed; the defendant actually appears to have initiated conversations with Officer Dunn on two to three occasions during this episode. The defendant’s degree of intoxication or impairment was not so extreme as to render him incapable, by virtue of intoxication, from understanding the nature of the events or from forming an intent to consent to the administration of the examination. I find no overreaching on the part of law enforcement officials to suggest that the defendant’s consent was anything less than a voluntary act.
*645 Officer Dunn explained to the defendant the three possible scenarios that would result from the defendant’s taking the breathalyzer examination on at least two occasions. I conclude that they were nothing more than a factual recitation of the consequences of submitting to the breathalyzer examination rather than an impermissible police coercion that would nullify the defendant’s consent (see, e.g., People v Bracken, 129 Misc 2d 1048 [Crim Ct, Kings County 1985]).
I am somewhat troubled by the repetition of these consequences immediately prior to the administration of the breathalyzer examination specifically with reference to the statement that the defendant’s license would be revoked if there was a refusal to submit to the test. Clearly, this would be a proper statement of the law if the refusal occurred within two hours of the defendant’s arrest. Frankly, after the Atkins decision (supra) I am not sure the effect that a refusal to submit to a chemical test after two hours of arrest would have on the court’s ability to revoke or suspend a defendant’s license. Accordingly, since the law in this area is going through a transitional phase, I cannot in good conscience hold this statement to be a material misstatement of fact relied upon by the defendant to void his otherwise voluntary consent.
From all of the circumstances presented, I conclude that there was a voluntary consent to submit to the breathalyzer examination. The results of this test are admissible.