People v Williams (2024 NY Slip Op 50780(U))

[*1]

People v Williams

2024 NY Slip Op 50780(U)

Decided on June 24, 2024

Criminal Court Of The City Of New York, Kings County

Glick, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 24, 2024
Criminal Court of the City of New York, Kings County

The People of the State of New York

against
Luke Williams, Defendant.

Docket No. CR-034082-23KN

People: Kings County District Attorney's Office by ADA Tatiana Strickland
Defendant: The Legal Aid Society by Rebecca Laden, Esq.

Joshua Glick, J.

Defendant is charged with V.T.L. §1192(2), Driving While Intoxicated and related charges in connection with an incident that allegedly occurred on September 15, 2023.
Defendant moves to suppress noticed statements, physical evidence, chemical test evidence, police observations, video recordings, photographs, and all other fruits of his arrest by police. Defendant also moves to preclude statements he argues were not properly noticed.
The Prosecution opposes.
On April 17 and 18, 2024, the Court conducted a combined Dunaway, Huntley, Atkins, Capraella, and Mapp hearing. The Prosecution presented two witnesses at the hearing, Police Officers Adam Rodriguez and Shaquille McFarlan. The Prosecution admitted into evidence the body-worn camera footage (BWC) of each officer and video from the Intoxicated Driver Testing Unit (IDTU). Defendant did not present any witnesses or admit any evidence. After testimony was concluded, both parties submitted written memoranda.
The Court now makes the following findings of fact and conclusions of law.
 FINDINGS OF FACT
The Court finds as fact all events depicted in the videos admitted into evidence. The Court also credits the testimony of Officers Adam Rodriguez and Shaquille McFarlan to the extent set forth below and makes the following specific findings of fact.
Testimony of Police Officer Shaquille McFarlan
Officer Shaquille McFarlan has been employed by the New York City Police Department (NYPD) for approximately two years. He was at the time of the arrest in the instant case and still is assigned to the 75th Precinct as a patrol officer. During his time in the police academy, Officer McFarlan received approximately eight hours of training on recognizing the signs of intoxication and portable breath testing. Over the course of his career, Officer McFarlan has made three arrests for suspected driving while intoxicated and has assisted in more than ten others.
On September 15, 2023, Officer McFarlan was working with a partner, Officer Tyler Angelo in uniform, in a marked police vehicle. Around 7:00 p.m., Officers McFarlan and Angelo were notified of an accident at Georgia Avenue and Stanley Avenue. They responded to the scene approximately ten or fifteen minutes later, where Officer McFarlan observed two parked [*2]vehicles and two people standing outside the vehicles. One of the vehicles, a red Dodge Charger, was missing most of its front bumper. Defendant was standing next to the passenger side of the red Charger. Officer Angelo requested Defendant's license and registration. Officer McFarlan instructed Defendant to leave the keys out of the car. While standing about an arm's length away, Officer McFarlan smelled alcohol coming from Defendant's breath. He also noticed Defendant had slurred speech and difficulty walking around to the driver's side of the vehicle. He also noticed an odor of urine on Defendant. Sometime between 7:00 p.m. and 8:00 p.m., Officer Angelo placed handcuffs on Defendant for suspected driving while intoxicated. After handcuffing Defendant, Officer Angelo asked if he had been drinking, which Defendant answered affirmatively. Officer Angelo asked how much he had drunk, which Defendant also answered.
Testimony and BWC of Police Officer Adam Rodriguez
Officer Adam Rodriguez has been employed by the NYPD for approximately a year and a half. He was at the time of the arrest in the instant case and still is assigned to the 75th Precinct as a patrol officer. During his time at the police academy, Officer Rodriguez received training on the use of the breathalyzer machine and recognizing signs of intoxication. This was the first arrest he has made for suspected driving while intoxicated and he has participated in at least thirty others.
On September 15, 2023, Officer Rodriguez was working with a partner, Officer Gerard Duffy in uniform, in a marked vehicle. Shortly before 7:50 p.m., Officer Duffy received a phone call from Officer Angelo about a two-vehicle collision and a possible arrest for driving while intoxicated. Officer Rodriguez overheard the phone call.
At approximately 7:51 p.m., Officers Rodriguez and Duffy arrived at the intersection of Georgia Avenue and Stanley Avenue. Officer Rodriguez observed two vehicles with extensive body damage. He spoke to Officer Angelo, who relayed his conversation with one of the drivers involved in the collision. The driver said Defendant's car hit his own car while he was going through the intersection. Officer Rodriguez never spoke to the other driver with whom Officer Angelo spoke. When Officers Rodriguez and Duffy arrived on scene, Defendant was standing against a building at the intersection. Defendant had already been handcuffed prior to the officers' arrival, and his car was parked with the engine turned off. Officer Rodriguez noticed an odor of urine coming from Defendant's body, and an odor of alcohol on Defendant's body and breath. He also noticed Defendant's eyes were bloodshot and watery and his speech was slurred. Defendant was placed under arrest at 7:57 p.m. and transported by police car to the IDTU at the 78th Precinct. Officer Duffy drove, Officer Rodriguez sat in the front passenger seat, and Defendant sat in back seat.
Officer Rodriguez testified that during the drive from the scene to the IDTU, Defendant made two statements. First, Defendant asked, "Is this because of the alcohol?" Second, Defendant said, in sum and substance, "Lock me up; I drink, so what?" Officer Rodriguez testified that in both instances, neither he nor Officer Duffy were speaking to Defendant prior to his statements, nor did they take any action to initiate conversation.
Around 8:30 p.m., Officers Rodriguez and Duffy and Defendant arrived at the IDTU at the 78th Precinct. Defendant was not offered a breath test until approximately 10:30 p.m. When he was offered the breath test, Defendant agreed verbally and took the test. Defendant was also offered other non-chemical tests, some of which he took. Officer Rodriguez was present in the [*3]IDTU room for the duration and observed Defendant throughout. Officer Rodriguez issued Miranda warnings and proceeded to question Defendant. Defendant acknowledged he understood the warnings and spoke to Officer Rodriguez in response to the questions. Officer Rodriguez testified that Defendant said he was coming home from work, from Staten Island to Brooklyn; that he was drinking vodka; that he drank "half a gallon"; that he had a cooler in the front passenger seat of his car in which he had the drinks; and "that there was vodka in the car." Officer Rodriguez also testified that when he asked Defendant, "When did you start drinking? [Defendant] kept saying, 'Let me tell you something' and then would go on a rant." Officer Rodriguez testified that, at times during their interaction, he was unable to understand what Defendant was saying because Defendant's speech was "jumbled." During this period, Officer Rodriguez did not make any threats or promises to Defendant to induce him to answer questions, and neither Officer Rodriguez nor any other officer drew his gun.
Around 12:20am at the 75th Precinct, Officer Rodriguez searched Defendant's car with the assistance of Officer Charlie Brucia. Officer Rodriguez testified that conducting inventory searches of vehicles is standard practice for the NYPD. He further testified that it is the NYPD's practice to inventory and voucher everything in the vehicle during such searches. He testified that the NYPD's standard practice is to voucher items in one of two ways: for safekeeping if they are not related to an investigation or as arrest evidence. Officer Rodriguez's motivation for conducting the search was multifaceted: in general, to safeguard Defendant's property and to make sure Defendant did not have any illegal contraband, and specifically because Defendant told him there was vodka in the car and Defendant was suspected of driving while intoxicated. Defendant's car contained a substantial amount of personal property at the time of the search, including a cooler in which there were several water bottles, one of which contained a liquid that smelled like alcohol; a baton; a bottle of vodka; a receipt for the purchase of alcohol earlier that day. Officer Rodriguez vouchered two items found during the search, the bottle of vodka and the baton, both of which he vouchered as arrest evidence. He did not voucher any other items from Defendant's car. His failure to voucher any other property was done in error.

 CONCLUSIONS OF LAW
At a suppression hearing, the prosecution has the burden of going forward to show, by credible evidence, the lawfulness of the police conduct (People v Hernandez, 40 AD3d 777 [2007]; see also People v Berrios, 28 NY2d 361 [1971]; People v Wise, 46 NY2d 321 [1978]). To evaluate the police conduct, the Court must determine whether it was justified at its inception and whether it was reasonably related in scope to the circumstances at the time (People v DeBour, 40 NY2d 210 [1976]). If the prosecution satisfies the initial burden of going forward, the defendant "bears the ultimate burden of proving that the evidence should not be used against him" (People v Berrios, 28 NY2d at 367).
Probable Cause (Dunaway)
To approach a parked vehicle and request information, police must have an objective credible reason not necessarily indicative of criminality (People v Harrison, 57 NY2d 470 [1982]; People v Ocasio, 85 NY2d 982, 984 [1995]). Initial questioning, such as a request for a driver's license, comprises such information gathering (New York v Hollman, 79 NY2d 181 [*4][1992]; People v Thomas, 19 AD3d 32 [2005]). Such an intrusion must be predicated on more than a hunch, whim, caprice, or idle curiosity (People v DeBour, 40 NY2d at 217). Here, Officers McFarlan and Angelo responded to a reported accident involving two vehicles. Upon arriving, they observed two damaged vehicles. The report of the collision and the officers' own observation of its aftermath were a sufficient basis for them to approach and seek information.
VTL §1194(1)(a) provides that the police are permitted to effectuate a warrantless arrest for suspected driving while intoxicated where the arrestee was involved in a traffic collision, and the police have reasonable cause to believe the arrestee was intoxicated and driving at the time of the collision, even if the police did not witness such events. Officer Angelo spoke to the driver of one of the vehicles involved in the collision, who informed him that he had been struck by the other vehicle, driven by Defendant, while crossing the intersection. While speaking with Defendant, Officer McFarlan observed Defendant to be in possession of the keys to the red Dodge Charger with front end damage. Officer McFarlan also noticed several indicia of intoxication, such as the odor of alcohol coming from Defendant's breath, slurred speech, difficulty walking, and an odor of urine coming from Defendant's person. Taken together, the police had reasonable suspicion that Defendant had been driving, that he had been involved in a traffic collision, and that he had done so under the influence of alcohol (Pomento v City of Rome, 231 AD2d 875 [1996] [holding that a civilian witness's testimony that she had seen the defendant driving coupled with the police's own observations of damage to the vehicle and signs of intoxication were sufficient to make out reasonable cause to arrest under VTL §1194(1)(a)]; People v Parker, 197 AD3d 741 [2021] [holding that the police had reasonable suspicion that the defendant was driving while intoxicated such that they were authorized to detain him for questioning after responding to a call about an accident and observing the defendant's vehicle to be damaged and the defendant to have red eyes, slurred speech, and anxious behavior]; People v Kurovics (Matthew), 64 Misc 3d 77 [2019] [holding that circumstantial evidence of operation is sufficient where an identified citizen informed the police that the defendant was the operator of the other vehicle involved in the collision with his own, the defendant's identification was inside the vehicle, and the defendant displayed indicia of intoxication]; see People v O'Brien, 841 N.Y.S.2d 221 [2007]; see also People v Cullison, 8 Misc 3d 128[A] [2005]). Thus, the police behaved lawfully when they arrested Defendant.
Preclusion of Statements
To use a defendant's own statement as evidence at trial, the prosecution must give the defendant proper notice of the statement pursuant to CPL §710.30(1)(a). For notice to be proper, it must specify the time and place the statements were made and the sum and substance of the statements; the statements need not be transcribed verbatim, but they must be sufficiently described such that the defendant can intelligently identify them (People v Lopez, 84 NY2d 425, 428 [1994]). The purpose of the notice requirement is to afford the defendant an opportunity to challenge the voluntariness of the statements; "a defendant cannot challenge that of which he lacks knowledge" (People v Lopez, 84 NY2d at 428). "The obvious purpose of the statute is to afford a defendant adequate time in preparing his case in respect to the voluntariness of a [statement]" (People v Greer, 42 NY2d 170, 178 [1977]; People v Briggs, 38 NY2d 319, 323 [1975]). Inadequacy of a CPL §710.30 notice cannot be cured by discovery (Lopez at 428). The remedy for a lack of or improper notice is preclusion (CPL §710.30[3]).
The Prosecution served upon Defendant two separate notices pursuant to CPL [*5]§710.30(1)(a). The first notice lists twelve links to BWC. It does not have any times, dates, or summaries of the statements; the only information is the list of links with nothing more. This notice is baldly insufficient, as it fails to conform to the baseline requirements set forth in Lopez. Accordingly, the statements to which the notice refers are precluded (CPL §710.30[3]; People v Lopez, 84 NY2d 245; People v Sanchez, 82 Misc 3d 1239[A]).
The second notice lists three separate statements. Defendant moves to preclude the third of these statements. The notice lists the form of the third statement as "videotaped." It lists the date and time as "9/15/23 00:00" and the place as "at the pct." It says the statement was made to "Adam Rodriguez, shield: 00000, CMD: 552." The sum and substance of the statement is as follows: "I drank a one gallon [sic] bottle of vodka. It's in my car in the back seat. I left work at 3 and started drinking at 3. I was driving. There was nothing wrong with the car. It's completely functional. I have no injuries. I'm fine."
Defendant argues that the notice is deficient because it differs substantially from anything he said to police, and the time listed is approximately nineteen hours before his initial encounter with police. Taken together, these errors deprive Defendant of an opportunity to confidently ascertain what statement of his will be used against him such that he may challenge its voluntariness. Assuming the statement refers to those he made on the IDTU video, Defendant argues there are both small deviations (saying he left work at 3:30 p.m., as compared to the noticed statement, which says 3 p.m.) and entire fabrications (Defendant disputes ever saying anything about the functionality of his car, which appears in the noticed statement). Defendant also points out that the notice lists Officer Rodriguez as the person to whom the statement was made but asserts that his testimony at the hearing did not comport with the noticed statement. Defendant argues that without knowing when the statement was allegedly made, he cannot advance an argument for its suppression.
The Court agrees with Defendant that notice of the third statement is statutorily deficient under CPL 710.30(1)(a). Although the notice alerts Defendant that the statement was made at the precinct and to Officer Rodriguez, the rest is replete with errors and inconsistencies such that it is impossible to intelligently identify as required by People v Lopez. The purpose of CPL 710.30(1)(a) notice is "to facilitate a defendant's opportunity to challenge before trial the voluntariness of statements made by him" (Lopez, 84 NY2d at 428). Defendant was not in police custody at midnight, the time listed on the notice, and Officer Rodriguez did not testify to hearing Defendant say most of what was summarized. Defendant lacks sufficient information to investigate the circumstances of the alleged statement and challenge its voluntariness (People v Lopez; see People v Barnette, 150 AD3d 1134 [2017]; People v Smith, 138 AD3d 628 [2016]; cf. People v Bennett, 56 NY2d 837 [1982]; People v Holmes, 170 AD2d 534 [1991]; People v Laporte, 183 AD2d 803 [1992]; People v McDonald, 91 AD3d 515 [2012]). As such, the third listed statement on this notice is precluded (CPL §710.30[3]).
Suppression of Statements 
(Huntley)
To use a defendant's own statements against him at trial, the prosecution must prove beyond a reasonable doubt that the statements were made voluntarily and not obtained by means of coercion (People v Huntley, 15 NY2d 72, 78 [1965]). A defendant who is in custody may not be interrogated by law enforcement without being advised of his constitutional rights (Miranda v Arizona, 384 U.S. 436 [1966]). A defendant's custodial status is an objective inquiry which [*6]hinges on whether a reasonable person, innocent of any crime, would feel free to leave in defendant's circumstances (People v Yukl; 25 NY2d 585 [1969]). Interrogation refers to both express questioning and any words or actions by the police other than those ordinarily connected to arrest and custody that the police should know are reasonably likely to elicit an incriminating response (Rhode Island v Innis, 446 U.S.291, 301 [1980]).
Defendant moves to suppress the remaining two statements from the second notice provided by the Prosecution. He argues that when Officer Angelo asked if he had been drinking and how much he had drunk without first offering Miranda warnings, he violated Defendant's constitutional rights. Defendant argues that the continuous chain of events that followed never allowed him to return to the status of a person not under the influence of questioning. Thus, Defendant argues the statements were involuntary and must be suppressed.
The first statement is, in sum and substance, "Is this because of the alcohol?" The second is, in sum and substance, "Do what you got to do. I drink. So what?" Both statements occurred during transport from the scene to the precinct, after Defendant had been handcuffed, placed into the police car, and arrested. Defendant was undoubtedly in custody at the time he made both statements.
Defendant's argument fails on two fronts. First, Officer Angelo's questions were investigatory rather than an interrogation such that Miranda warnings were required (People v Hanna, 586 N.Y.S.2d 35 [1992] ["The police officer's questioning of defendant at the place where defendant's vehicle had been stopped for a traffic violation about whether he had been drinking and driving was clearly investigatory rather than custodial interrogation."]; People v Spencer, 289 AD2d 822 [2001] [holding that a police officer asking the defendant whether he had been drinking at the scene was investigatory rather than a custodial interrogation]; see also People v Mathis, 136 AD2d 746 [1988]; People v Morales, 216 AD2d 154 [1995] [holding that brief questioning after the discovery of a knife in the defendant's pocket "was permissible because it was intended to ascertain the nature of the situation during initial investigation of a crime, rather than to elicit evidence of a crime."]). Second, Defendant spoke spontaneously and without prompting by the police, as memorialized by Officer Rodriguez's BWC and hearing testimony. The officers did not ask him any questions or take any action to elicit the statements. The evidence before the Court demonstrates that both statements were not the product of interrogation and were made voluntarily (People v Miles, 206 AD3d 1011 [2022]; see People v Gadson, 239 AD2d 924 (1997)]. Defendant's motion to suppress the properly noticed statements is denied.
Suppression of Chemical Test Results 
(Atkins/Capraella)
VTL §1194(2) provides, in relevant part, that drivers are deemed to have consented to chemical testing within two hours of their arrest for suspected operation under the influence, such that the results of such testing are admissible in criminal prosecution. Even where a chemical test is done more than two hours after arrest, the results are admissible if the defendant voluntarily consents to the test (People v Atkins, 85 NY2d 1007 [1995]). In People v Capraella (165 Misc 2d 639 [1995]), the court held that the prosecution must demonstrate voluntary consent by clear and positive evidence; the court also enumerated several factors with which to make the determination.
Defendant moves to suppress the results of the breath test on the grounds that the test was [*7]administered more than two hours after his arrest, and he did not voluntarily consent to the test. Defendant argues that his response to the request was equivocal and that he was confused about what was happening.
The Court relies on the IDTU video, which captured the entire interaction, to assess Defendant's claims. Although the police requested that he submit to the test in the IDTU room of the 78th precinct, a custodial setting, the circumstances were nevertheless not unduly coercive. Defendant was not handcuffed. He had not been advised of his Miranda rights or interrogated by police. Defendant does not appear to have been so intoxicated that he could not understand the circumstances; rather, he appears to have comprehended the officers' instructions and questions and to have been able to stand and walk upright without issue. When asked if he will submit to the test, he answered affirmatively, walked on his own to the testing machine, and took the test. There is no evidence that the police engaged in any coercive conduct or made any threats to induce Defendant's consent. The Prosecution has demonstrated by clear and positive evidence that Defendant voluntarily consented to take the breath test (People v Atkins, 85 NY2d 1007 [1995]; People v Capraella, 165 Misc 2d 639 [1995]; see People v Benoit, 66 Misc 3d 218 [2019]). Defendant's motion to suppress the results of the test is denied.
Suppression of Physical Evidence 
(Mapp)
An inventory search of an impounded vehicle is an exception to the warrant requirement (Colorado v Bertine, 479 U.S. 367 [1987]; People v Galak, 80 NY2d 715 [1993]). Inventory searches have three key objectives: to protect personal property while in police custody; to protect the police from claims of lost, stolen, or damaged property; and to protect the police from dangerous instruments that may otherwise go unnoticed (People v Galak, 80 NY2d at 718). Such searches must be conducted "according to a familiar routine procedure" (Galak at 718). The procedure must pass a two-part reasonableness test: "[it] must be rationally designed to meet the objectives that justify the search in the first place," and "[it] must limit the discretion of the officer in the field" (id.). In short, inventory searches cannot be merely cover for rummaging for incriminating evidence without first obtaining a warrant (id.).
Defendant moves to suppress the tangible fruits of the search. The search at issue does not meet the requirements of a lawful inventory search. By Officer Rodriguez's own testimony, he deviated substantially from established procedure. He testified that NYPD policy is to voucher everything found during a search, labeling each item for safeguarding or as arrest evidence. He testified that Defendant's car contained a large amount of personal property, including a cooler, water bottles likely filled with alcohol, and a receipt for vodka from earlier that day. However, he vouchered only two items in total — the vodka bottle and a baton — both arrest evidence. Officer Rodriguez's search entirely ignored the goal of safeguarding Defendant's property, evinced by his failure to voucher even a single item for safekeeping. Moreover, Officer Rodriguez testified openly about the pretextual nature of the search, stating that Defendant's admission that there was vodka in the car led him to conduct the search. The evidence before the Court shows that this was not an inventory search, but rather an attempt to skirt the warrant requirement to collect incriminating evidence (People v Elpenord, 24 AD3d 465 [2005] [invalidating inventory search where the police failed to follow established procedure, instead using it as a pretext to search for evidence of a crime]; see People v Mintol 272 AD2d 558 [2000]; see also People v Russel; 13 AD3d 655 [2004]; cf. People v Morales, 189 AD3d 1464 [2020]; People v Taylor, 92 AD3d 961 [2012] [inventory search valid where results were fully [*8]recorded, albeit on the wrong form, according to policy]; People v Cochran, 22 AD3d 677 [2005] [validating an inventory search where the officer's testimony established that he followed police regulations and the purpose of the search was caretaking rather than criminal investigation]). Accordingly, Defendant's motion to suppress the fruits of the search is granted.

 CONCLUSION
For the reasons described above, Defendant's motion is GRANTED as to preclusion of the improperly noticed statements and suppression of the tangible fruits of the search; Defendant's motion is DENIED as to suppression of the properly noticed statements, results of the chemical test, and police observations, video recordings, and other fruits not specifically addressed herein.
This constitutes the decision and order of the Court.
Dated: June 24, 2024
Brooklyn, New York
Hon. Joshua Glick