OPINION OF THE COURT
Acting Chief Judge Simons.
Defendant has been convicted of several criminal possession charges based upon incriminating evidence found during an inventory search of a car in which he was a passenger. He contends that the search was unlawful under both the Federal and State Constitutions (US Const 4th Amend; NY Const, art I, § 12). Defendant recognizes that law enforcement officers may conduct an inventory search of an impounded automobile without a warrant, provided the search is conducted according to a " 'single familiar standard’ ” or procedure established by the police agency (Colorado v Bertine, 479 US 367, 375; see also, Illinois v Lafayette, 462 US 640, 648; People v Gonzalez, 62 NY2d 386, 390), and that the courts below found the police department had an established procedure here. He contends, however, that the department’s policy is so unrelated to the governmental interests it is intended to promote and so lacking in appropriate safeguards against police abuse that it does not survive constitutional scrutiny. We agree. The police department policy governing the search failed to generate a *717 meaningful inventory of the vehicle’s contents and allowed the officer conducting the search undue discretion. It, therefore, violated both the State and Federal Constitutions (see, People v Gonzalez, 62 NY2d 386, 389-390, supra [stating the general rule of consistency in applying the two constitutional clauses]).
I
On the night of August 5, 1990, Officer William Straub of the Lynbrook Police Department noticed a car with two occupants parked near a closed automobile dealership. A check of the license plate number indicated that the plates were from another vehicle and that the registration had expired more than a year earlier. Additional officers were called, and both the driver and her passenger, defendant Galak, were questioned by Officer Straub. Discovering that neither had a valid driver’s license, the officer placed the driver under arrest and impounded the vehicle.
Officer Straub then searched the car and found a dagger, a blackjack and an ignition device in the passenger compartment. Defendant admitted owning them and was subsequently charged with two counts of criminal possession of a weapon in the third degree, one count of the sale or possession of master or manipulative keys for motor vehicles and one count of possession of burglar tools. The car was driven back to police headquarters by one of the other officers and some five hours later, at the station, Officer Straub filled out the inventory report.
Following a suppression hearing, County Court ruled that the search was reasonable and the items found in the car admissible evidence.* Defendant thereafter pleaded guilty and *718 appealed to the Appellate Division, and it affirmed the judgment of conviction.
Both courts below determined that the inventory search by Officer Straub was conducted pursuant to a standard departmental procedure and, inasmuch as there is support in the record for that factual finding, this Court is bound by it (see, NY Const, art VI, § 3 [a]; see, e.g., People v Brooks, 65 NY2d 1021; People v Calhoun, 49 NY2d 398, 405). But a determination that a standard procedure existed and that Officer Straub followed it does not end our inquiry, for the standard procedure itself must conform to constitutional dictates (Florida v Wells, 495 US 1, 4). A departmental procedure, like the conduct of the searching officer, is judged by a standard of reasonableness, and it is self-evident that an unreasonable search is not somehow rendered reasonable, and therefore constitutionally permissible, by the mere fact that a departmental procedure was followed.
II
The analysis of what constitutes a reasonable inventory search begins with the language of the Fourth Amendment, which protects citizens not from all searches by governmental actors but only from those that are "unreasonable”. In its modern Fourth Amendment jurisprudence, the Supreme Court has held that the reasonableness of a search is calculated by weighing the governmental and societal interests advanced by the search against the individual’s right to be free from arbitrary interference by law enforcement officers (United States v Brignoni-Ponce, 422 US 873, 878; see also, South Dakota v Opperman, 428 US 364, 378 [Powell, J., concurring]; Colorado v Bertine, 479 US 367, 372, supra).
Three specific objectives are advanced by inventory searches: protecting an owner’s property while it is in the custody of the police; insuring police against claims of lost, stolen, or vandalized property; and guarding police and others from dangerous instrumentalities that would otherwise go undetected (Colorado v Bertine, supra, at 372; Illinois v Lafayette, 462 US 640, 646, supra). Against these governmental interests is weighed the individual’s expectation of privacy and, more particularly, the risk that the search will exceed the scope of its purposes and intrude without justification on the privacy interests of citizens (Florida v Wells, 495 US 1, 4, supra; South Dakota v Opperman, 428 US 364, 379-380, supra [Powell, J., concurring]).
*719 Although a warrant based on probable cause is not required (Colorado v Bertine, supra, at 371), courts have insisted that an inventory search be conducted according to a familiar routine procedure (id., at 375) and that the procedure meet two standards of reasonableness. First, the procedure must be rationally designed to meet the objectives that justify the search in the first place (Florida v Wells, supra, at 4). Second, the procedure must limit the discretion of the officer in the field (id.). In the absence of a warrant from a neutral and detached Magistrate, it is an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably and do not become little more than an excuse for general rummaging to discover incriminating evidence. The Supreme Court has underscored both the risk posed and the safeguard required: "We reaffirm these principles here: ' "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront” ’ ” (Colorado v Bertine, 479 US 367, 375, supra, quoting Illinois v Lafayette, 462 US 640, 648, supra; New York v Belton, 453 US 454, 458). While a certain latitude may be extended to the officers in the field for the "exercise of judgment based on concerns related to the purpose” of the search, the power to grant and define such latitude remains the province of departmental policy makers (Florida v Wells, 495 US 1, 4, supra).
Thus, two elements must be examined: first, the relationship between the search procedure adopted and the governmental objectives that justify the intrusion and, second, the adequacy of the controls on the officer’s discretion. The procedure followed by the police in this case fails to meet constitutional standards in both respects.
III
Officer Straub testified at the suppression hearing that he did not know of any written regulations for inventory searches by the Lynbrook police. Asked how he was instructed on conducting an inventory search, he responded, "Training officers, on-the-job training, supervisor.” Later the following exchange occurred between him and defense counsel:
"Q. What is your — do you have particular standard instructions?
*720 "A. Instructions? No, we don’t have instructions.
"Q. Nothing written anywhere?
"A. Not that I recall.
"Q. They leave it to your judgment on the scene?
"A. That’s correct.”
The officer’s testimony further established the departmental procedure he followed when searching the car the night defendant was arrested. No inventory report of any sort was made at the time of the search. Although the department had a standard inventory form to be filled out, it was not used during the search and was not filled out by the officer until some five hours later after he returned to headquarters. The officer testified that the department’s procedure required that he take into police custody certain items and return others to the owners. Asked to describe the standards for determining what items were returned, he said: "It depends. Like I said, if —some kinds of contraband or weapons, we voucher that. If there is money or valuables, the defendant will usually take them. If there is a radio to be removed, they can take it” (emphasis added). The police procedure did not require a complete inventory of personal property in the vehicle. Although the official form contained a checklist to catalog the car’s equipment and a section for reporting any damage found on the vehicle, it directed the officers to list only those items retained by the police. When completed, a copy of the form was provided to defendant but it does not indicate whether items were left in the car or returned to him or the driver. Neither the driver nor the passenger was asked to sign a receipt for any items delivered to them.
Simply put, this procedure does not do what it must do: Create a usable inventory. An inventory search is justified by the fact that a detailed and carefully recorded inventory protects the seized property while it is in police hands and insures against claims of loss, theft or vandalism. Five hours elapsed between the search and the listing of the property vouchered here and no record was kept of what property, if any,: was left in the car or returned to defendant and his companion. It is obvious that a list made so long after the search which does not indicate the disposition of each item removed is of little use either to the police or to citizens who find themselves disputing the whereabouts of an item or the accuracy of the record. Manifestly, the procedure was so unrelated to the underlying justification for inventory *721 searches that we have no difficulty finding it to be arbitrary and irrational, and the search it generated unreasonable.
The procedure is also flawed by the impermissible level of discretion given to the searching officer, as evidenced by Straub’s testimony. The People acknowledge that the discretion is broad, but they read Colorado v Bertine and Florida v Wells as limiting only the discretion exercised in determining the scope of a search. They view the discretion vested in the Lynbrook police officers as involving decisions only after completing the search, decisions about whether to retain property in the car, leave it there or deliver it to the owner. They contend no legitimate privacy interest is impaired by that conduct.
The People’s attempt to distinguish between kinds of discretion misapprehends what it is that makes discretion in the field objectionable under our Constitutions. By imposing limits on both search and seizure, the Fourth Amendment, like its State counterpart, is intended to keep citizens "free from arbitrary interference” by government officials (United States v Brignoni-Ponce, 422 US 873, 878, supra [emphasis added]; South Dakota v Opperman, 428 US 364, 377, supra [Powell, J., concurring]). When the warrant requirement is interposed, it is the Magistrate’s judgment that controls. A properly drawn inventory procedure may accomplish much the same purpose. But when "uncanalized discretion” is ceded to those in the field, there is created not just the possibility but the probability that the search and seizure of a citizen’s personal effects will be conducted inconsistently, subject to caprice and the personal preferences of the individual officers — in short, it will be conducted arbitrarily (see, LaFave, Controlling Discretion by Administrative Regulations: The Use, Misuse, and Nonuse of Police Rules and Policies in Fourth Amendment Adjudication, 89 Mich L Rev 442, 459). Arbitrary decision-making about what to seize, no less than arbitrary decision-making about what to search, creates unacceptable risks of unreasonableness in an inventory search policy.
We do not attempt today to set forth rules precisely demarcating what would qualify as timely completion of an inventory search (see, Illinois v Lafayette, 462 US 640, 646, supra) or when unwritten inventory policies will be constitutionally permissible (see, e.g., United States v Skillern, 947 F2d 1268; United States v Frank, 864 F2d 992). But whatever flexibility the police may have in setting an inventory policy, it was *722 certainly exceeded here, and the search was invalid under both the State and Federal Constitutions.
Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress granted, and the indictment dismissed.
Judges Kaye, Titone, Hancock, Jr., Bellacosa and Smith concur.
Order reversed, etc.

 The People argue on appeal that defendant, as a passenger in the car, had no expectation of privacy in the vehicle and therefore lacked standing to challenge the search (People v Ponder, 54 NY2d 160). The suppression court ruled that defendant had standing under People v Millan (69 NY2d 514) and People v Wesley (73 NY2d 351, 360), which held that an automobile passenger who was otherwise a stranger to the vehicle had automatic standing when the statutory presumption of Penal Law § 265.15 (presence of weapon in vehicle creates presumption of ownership by all occupants) applied. The People now make a factual argument, not made below, that defendant was charged with actual possession, not constructive possession, and that they did not intend to rely on Penal Law § 265.15. Inasmuch as the People accepted the court’s ruling on standing and defendant’s plea of guilty thereafter without making that election, we do not address their standing argument on appeal.