(August 24, 1995)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL DICKENS, Appellant. [630 NYS2d 737] —Judgment, Supreme Court, New York County (Richard Carruthers, J.), rendered December 9, 1992, which convicted defendant, upon his plea of guilty, of criminal possession of a controlled substance in the third degree, and sentenced him, as a second felony offender, to a term of $4^1/_2$ to 9 years, affirmed.

Defendant was stopped by two police officers who had observed him changing lanes without signalling and driving his truck without license plates. The officers arrested defendant after he was unable to produce a license, registration, insurance card, or any type of identification. Following the arrest, one of the officers observed a large shopping bag on the passenger seat and looked inside, finding a bag of potato chips, a plastic bag containing crack vials, and a bag of cocaine. The

truck was driven to the precinct, where it was searched further and vouchered. Defendant moved, *inter alia*, to suppress the cocaine and that branch of the motion was denied.

Defendant argues that the search was not a proper inventory search on the grounds that there was no evidence that an inventory was compiled, that there was no evidence of any standardized procedures for inventory searches, and that the officer who conducted the search exercised unfettered discretion in so doing. Defendant failed to preserve the latter two arguments before the hearing court and only peripherally raised the first argument in connection with another theory. However, were we to review the claims, we would nevertheless find that the search of the bag was conducted pursuant to a standard procedure which was designed to meet the legitimate objectives of the search, and which limited the discretion of the officer in question (*People v Galak*, 80 NY2d 715, 719; *People v Henriquez*, 162 AD2d 206, 207). The officer who performed the search of the bag testified that he did so to ensure his safety and the safety of his partner inasmuch as they would be driving the truck back to the precinct. Significantly, he testified that the Patrol Guide directed him to voucher anything of value in a vehicle for safekeeping and to search a vehicle for any type of contraband, such as a bomb or a weapon. Inasmuch as defendant, an unlicensed driver, was not authorized to drive the truck back to the precinct, it was reasonable for the police to impound the truck at the scene and search it to protect them from any potential danger until the truck was brought back to the precinct, where a more complete search could be accomplished (*supra; People v Castillo*, 150 AD2d 957, *lv denied* 74 NY2d 806). Moreover, contrary to defendant's contention that an inventory was not made, the truck was eventually removed to the precinct, where it was subject to a comprehensive search and vouchered. Concur—Sullivan, Wallach, Nardelli and Tom, JJ.

Murphy, P. J., dissents in a memorandum as follows: Following the denial of his motion to suppress contraband found in the vehicle he had been driving, the defendant entered a plea of guilty to criminal possession of a controlled substance in the third degree. The only issue now raised by the defendant on his appeal from the judgment of conviction is whether the motion court, in denying suppression, correctly determined that the warrantless roadside search of a bag found in the vehicle driven by him was justifiable as an inventory search.

The relevant facts are as follows. On July 17, 1991 Police Officers Felz and Evans of the 30th police precinct, while on mo-

tor patrol on upper Broadway in Manhattan, stopped a Nissan Pathfinder truck driven by defendant. Officer Felz testified that the truck was stopped because it had changed lanes without signalling and because its subsequently discovered temporary transit license plate could not be discerned through the vehicle's darkly tinted rear window. When defendant could not produce a driver's license, or registration and insurance cards, he was informed that the vehicle would be taken to the 30th police precinct where it would be held pending determination of the owner's identity. It was at this point that Felz, while walking around the vehicle, noticed a large shopping bag on the front passenger seat. As he could not see what was in the bag from where he stood, he leaned inside the passenger compartment and peered inside the bag. At first he saw only a package of potato chips but upon removing it discovered beneath two additional bags, one containing drug paraphernalia and the other cocaine. While he acknowledged that he had been searching for contraband, Felz did not at the hearing attempt to justify the search as one for evidence of crime; he and, indeed, the Trial Assistant, maintained rather that the search of the bag was sustainable as an inventory search. In this latter connection he asserted that he had looked inside the bag in order to ascertain that it contained nothing which might endanger the officer assigned to drive the seized vehicle to the precinct.

The motion court agreed with the People that the warrantless search of the shopping bag was sustainable as an inventory search and, accordingly, rejected the express, and, therefore, preserved claim of the defendant to the contrary.[1]

While inventory searches may be performed without a warrant, they may not be employed to circumvent the requirement of a sufficient predicate for an investigative search. Thus, a police officer acting within the law's permission to create an

---

1. Defense counsel argued:

"Even though what Officer Felz did here was not an inventory search, if they were ultimately going to inventory the contents, the car would be taken back to the precinct. There would be a process done of inventory. That wasn't what was done here.

"If the drugs had been recovered during an inventory search that would become an issue. I submit to the Court that was not done here so that, in fact, what was done was a search while, perhaps, the defendant was being held for some kind of investigative purposes, if Officer Felz's testimony is believed."

inventory of legitimately impounded property may not rummage about arbitrarily in search of incriminating evidence, but must act in accordance with established regulations effectively limiting his or her discretion about what is to be searched and how the search is to be accomplished (*Florida v Wells*, 495 US 1, 4; *People v Galak*, 80 NY2d 715, 719). The purpose of such a search, of course, is not to uncover evidence of crime but simply to produce "a detailed and carefully recorded inventory [to] protec[t] the seized property while it is in police hands and [to] insur[e] against claims of loss, theft or vandalism." (*People v Galak, supra*, at 720.) In assessing, then, whether a search may be sustained as falling within the inventory exception to the warrant requirement, it is necessary to determine whether the search was in fact performed for the purpose of producing an inventory and whether the inventorying officer's discretion respecting the scope and manner of the inventory was appropriately limited by " ' " '[a] single familiar standard' " ' " (*People v Galak, supra*, at 719, quoting *Colorado v Bertine*, 479 US 367, 375).

There was in this case no evidence warranting an affirmative response to either inquiry. As defense counsel expressly noted, the People failed to show that the roadside search had, by itself or in conjunction with any subsequent precinct search, resulted in any usable inventory of the Pathfinder's contents.[2] It is thus difficult, if not impossible, to perceive the requisite connection between the search and the claimed legitimating objective. Nor was there evidence that Officer Felz's search of the shopping bag had been conducted pursuant to any set of preestablished rules limiting his discretion in the field. The People introduced no competent proof of any departmental regulations pertinent to the conduct of inventory searches, nor could the existence of any constitutionally sustainable set of standard inventory procedures be inferred from Felz's account of his conduct. It bears repetition that nothing Felz did led, or even could have led, to the production of a usable inventory. The search of one bag in a truck cannot reasonably be supposed an adequate basis for an inventory of the truck's contents. And, even if the immediate purpose of the search was not the production of an inventory but, as Felz claimed, to

---

2. Felz testified that apart from his search of the bag, he did not inventory the truck's contents. And, while he testified that he thought, although he could not be sure, that his partner Evans performed the inventory, Evans, who had been dismissed from the force prior to the hearing in this case, did not testify. Nor, contrary to reasonable expectation, did the People offer any other evidence establishing that an inventory had, in fact, been performed and appropriately documented.

assure that the vehicle contained nothing of danger to the officer who would drive it to the precinct where it would later be inventoried, it is hard to perceive how the search of a single bag would have been productive of the assurance purportedly sought; the search of the bag in no way discounted the possibility that a weapon or other dangerous object had been secreted elsewhere in the truck. This was in the end not a search rationally related to any permissible objective advanced in its justification. As such, it was a search fundamentally violative of the Fourth Amendment's prohibition against "unreasonable" searches and seizures. Indeed, the patently arbitrary decision of Officer Felz respecting what was to be searched exemplifies precisely the sort of decision-making which should not occur if an officer is acting pursuant to valid preestablished inventory procedures. As the Court observed in *Galak (supra,* at 721), "Arbitrary decision-making about what to seize, no less than arbitrary decision-making about what to search, creates unacceptable risks of unreasonableness in inventory search policy".

Although the motion court thought Officer Felz's search of the bag sustainable as an inventory search on the authority of *People v Gonzalez* (62 NY2d 386), the case is readily distinguished. Indeed, the issue in *Gonzalez* was not, as it is here, whether there had in fact been a sustainable inventory search—it was conceded that the vehicle impounded in *Gonzalez* had been permissibly inventoried, an actual inventory having been generated at the station house in the direct aftermath of the impoundment; the issue was rather whether under their unchallenged authority to conduct the inventory the police were entitled to open and search a closed container found within the seized vehicle. By contrast, no issue is raised in the present case as to whether the bag might have been searched as part of a concededly permissible station house inventory; it is clear from *Gonzalez* that had the search been sustainable as an inventory search the bag could have been searched. Instead, what is challenged is whether, in the first instance, the search performed qualified in any respect as an inventory search. And, where, as here, there is no evidence that any inventory was produced, and the arbitrarily selective search conducted cannot even be viewed as possessing inventory-related utility, it would seem clear that there exists utterly no basis upon which to conclude that the warrantless search was one constitutionally sustainable by its ends and means as one for the creation of an inventory (*People v Galak, supra*). Stripped of the obviously retrospectively conceived and proffered theory of justification, this was in its essential aspect nothing more

than an investigative search performed without any constitutionally sufficient predicate.[3]

Accordingly, the judgment of the Supreme Court, New York County (Richard Carruthers, J.), rendered December 9, 1992, convicting defendant, upon his guilty plea, of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of $4^{1}/_{2}$ to 9 years, should be reversed, the motion to suppress the contraband granted, and the indictment dismissed.

---

3. I note that the People have never even attempted to justify the challenged search as one undertaken to uncover evidence of crime. The reason is obvious; the record simply does not yield any predicate for an investigative search, much less one which would have permissibly extended to the bag in which the contraband was discovered.