OPINION OF THE COURT
John M. Leventhal, J.
*1025 The defendant Steven Sommerville stands charged in a nine-count indictment with the crimes, inter alia, of burglary in the first degree, assault in the second degree, criminal contempt in the second degree, and intimidating a witness in the third degree. A Mapp hearing was held before this court on October 23, 1996. Oral argument was held and memoranda of law were submitted by both sides. The issue to be determined is whether the reading of specific entries in the defendant’s "weekly appointment calendar” constitutes a proper police precinct inventory search of items secured from defendant’s knapsack upon his earlier arrest. Based upon the credible evidence of record, the court makes the following findings:
FINDINGS OF FACT
The sole witness to testify at the Mapp hearing was Detective Joseph Quinn of the 75th Detective Squad. The court finds Detective Quinn to be a credible witness.
On April 30, 1996, Detective Quinn arrested the defendant at New York Technical College for the crimes charged herein. The defendant had a knapsack in his possession when he was placed under arrest. The various contents of the knapsack were placed on a table, then replaced in the knapsack where they were brought to the precinct for vouchering while defendant’s arrest was being processed.
The inventory search was conducted as follows: Detective Quinn opened the knapsack and itemized all the objects. Receipts (vouchers) were prepared. Books such as the defendant’s textbooks and weekly appointment calendar were opened, turned upside down, shaken and then feathered. At the hearing Quinn stated that he had looked at every page of the defendant’s books because the procedure employed for the inventory of books also required him "to look at every page”. He looked at every page of defendant’s textbooks, but did not read the pages.
After completing the inspection of the textbooks relating to the inventory search, Quinn turned his attention to the defendant’s 1996 weekly appointment calendar book. Written entries appeared only in the period from January 1-14 and March 28 through the end of April. He read the entries in the weekly reminder of April 22-24. Said entries were all on the same page. Quinn thought that these entries might be significant to his investigation, as the date of the purported crime occurred on April 22, 1996. The entry of April 22, 1996 read in *1026 part: "This morning I finally caught up to the bitch and fucked her up. Not bad enough. I might regret letting her live.”*
At the hearing the court examined the appointment book. The page wherein the relevant notations were written measures 6 inches by 31/2 inches. Said page provides space for the dates April 22, 23 and 24. The area allowed for each day is only l5/s inches by 31/2 inches. The entry lines within each day are drawn one eighth of an inch apart.
CONCLUSIONS OF LAW
An inventory search constitutes a well-defined exception to the warrant requirement. (South Dakota v Opperman, 428 US 364; People v Sullivan, 29 NY2d 69.) It is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration. (Illinois v Lafayette, 462 US 640, 644.) The Supreme Court and the Court of Appeals have found inventory searches to serve three governmental interests: protecting an owner’s property while it is in the custody of the police; insuring police against false claims of lost, stolen or vandalized property; and guarding the police and others from dangerous instruments that would otherwise go undetected. (Colorado v Bertine, 479 US 367, 372; Illinois v Lafayette, 462 US, at 646, supra; People v Gonzalez, 62 NY2d 386, 389.)
It is now settled that law enforcement officers may conduct an inventory search without a warrant, "provided the search is conducted according to a ' "single familiar standard” ’ or procedure established by the police agency”. (People v Galak, 80 NY2d 715, 716, citing Colorado v Bertine, 479 US, at 375, supra; Illinois v Lafayette, 462 US, at 648, supra; People v Gonzalez, 62 NY2d, at 390, supra.) Although the existence of a standard procedure is a requirement of a valid inventory search, it is not, however, determinative. The. standard procedure must conform to constitutional dictates. (Florida v Wells, 495 US 1, 4.) The reasonableness of a search is calculated by weighing the governmental and societal interests advanced by the search against the individual’s expectation of privacy, and more particularly the risk that the search will exceed the scope of its purpose and intrude without justification on the privacy interest of citizens. (People v Galak, 80 NY2d, at 718, supra, citing, inter alia, United States v Brignoni-Ponce, 422 US 873, *1027 878, and Florida v Wells, 495 US, at 4, supra; see also, Delaware v Prouse, 440 US 648, 654.)
The procedure is required to meet two standards of reasonableness. First, the procedure must be rationally designed to meet the objectives that justify the search. Second, the procedure must limit the discretion of the officer in the field. (Florida v Wells, 495 US, at 4, supra.) The relationship between the search procedure adopted and the governmental objectives that justify the intrusion, as well as the adequacy of the controls on the officer’s discretion must then be examined. (People v Galak, 80 NY2d, at 719, supra.)
At the hearing Quinn outlined the routine procedure that an officer employs when conducting an inventory search of a book — shaking the book upside down, feathering its pages, arid then "looking” at each page. The "looking” aspect of the procedure may be related to one or more of the three underlying purposes that justify an inventory search. It may protect an owner’s property while in the custody of the police if small valuables are secreted within the pages. Further, this procedure may in certain instances guard the police from dangerous instrumentalities such as razors or thin blades that may otherwise go undetected.
Given the particularities of the case at hand, however, where the written entries were minute and required more than a mere glance, the reading of said entries involved the officer’s affirmative and considered decision to discern the contents contained therein. The inventory process should not permit an officer at his unbridled discretion to elect to read entries that might prove "relevant to his investigation”. Indeed such discretion runs afoul of the second standard of reasonableness. A police officer is not allowed to search for the sole purpose of investigation even when he is following standardized care routines as a part of the inventory process. "The individual police officers must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of a crime’.” ( Florida v Wells, 495 US, at 4, supra, citing Colorado v Bertine, 479 US, at 376, supra [Blackmun, J., concurring].) In contrast, had the written entries been in bold or large print, a significantly different issue, not now before the court herein, would be presented. In that event, the court would have to determine whether cognition and retention of the written words was simply unavoidable or a product of a deliberate investigative attempt.
In its desire to keep the law of New York consistent with the Supreme Court’s rulings in this area, the Court of Appeals has *1028 approved the inventory search of closed containers. (People v Gonzalez, 62 NY2d, at 389-390, supra; cf., People v Roman, 53 NY2d 39.) In reliance thereon, the People maintain that Detective Quinn’s actions in opening the weekly appointment book and "looking” at the individual pages was proper. (People v Perel, 34 NY2d 462; People v Greenwald, 90 AD2d 668.)
With much regret the court must reject this assertion. The propriety of an inventory search of closed containers is not immune from the two-tiered test of reasonableness articulated by the Court of Appeals in People v Galak (80 NY2d 715, supra.) Prior to Galak, the Second Department in People v Thomas (163 AD2d 438) held that the police exceeded the permissible bounds for an inventory search by playing an incriminating tape discovered in defendant’s automobile which was lawfully impounded. The playing of the tape was not necessary to ensure its return to the defendant and did not further any valid objectives of an inventory search. Similarly, as previously explained, while a police officer’s leafing through the individual pages in a weekly appointment calendar book may further one or more of the governmental interests sought to be protected in the context of an inventory search, the reading of the entries therein furthers no such purpose.
Additionally, although the officer maintains that the reading of the entries in the calendar book is permitted in the police department’s routine inventory procedures, the court finds that, to the limited extent that said procedure allows this conduct, it is invalid.
For all of the foregoing, the defendant’s motion to suppress the contents of the appointment calendar is granted.

 The entry of April 23 read in part: "I almost got locked up and now I do regret letting the girl live. So now I will kill her.”