OPINION OF THE COURT
Joseph J. Maltese, J.
After a pretrial Wong Sun hearing, this court did not suppress as "fruits of the poisonous tree,” the use of the names *353 found on checks discovered in the defendant’s wallet, after arrest, during the booking procedure. Consequently, the witnesses discovered from the checks were able to testify at trial.[1]
FACTS
On December 6, 1995, the defendant, who at one time was a licensed physician, was arrested in the home of a patient by Investigator Rauchet of the New York Attorney-General’s office.[2] The defendant was charged with unauthorized practice (of medicine) a violation of Education Law § 6512 (1), a class E felony. At the arrest two bags were seized from the defendant containing various medical instruments and assorted papers.
After the arrest the defendant was then brought to the office of the Richmond County District Attorney where he was processed and booked just prior to being lodged in the 120th Police Precinct holding cell to await transport to criminal court for arraignment.
At the District Attorney’s office, before being brought to the holding cell, the defendant was told to empty his pockets by Investigator Rauchet. The Investigator claims he observed cash, credit cards, numerous other cards and papers, four checks made payable to the defendant and a copy of a New York State medical registration certificate issued in January of 1995 with an expiration date of September 30, 1997. Not finding any contraband in the wallet, Investigator Rauchet returned the wallet to the defendant. However, before returning the wallet he photocopied the four checks and the copy of the defendant’s medical registration certificate which were contained in the wallet. While Investigator Rauchet inventoried the contents of the two bags, which were retained as evidence, he claims that he did not record an inventory of the wallet because he was not keeping it as evidence as he was not sure it was legal to keep the wallet.
Nonetheless, the wallet and all of its contents were returned to the defendant who retained it on his person when he was transferred to the New York City Police Department for overnight housing awaiting transport to the criminal court for arraignment.
At a pretrial Mapp suppression hearing the Assistant Attorney-General stated she did not intend to use the copies of *354 the checks in her case-in-chief, but would call as witnesses the people who wrote the checks. The defendant states that the search of the wallet was illegal and therefore any of the "fruits of that poisonous tree” should be suppressed in accordance with Wong Sun v United States (371 US 471 [1963]) and People v Rodriguez (11 NY2d 279 [1962]).
DISCUSSION
It is a common occurrence at police stations throughout the State that upon a defendant’s arrest and pursuant to normal booking procedures various items on the defendant’s person will be seized. Interestingly, the defendant’s counsel acknowledges that the Investigator had the right to keep the wallet upon seizing it during his clients "booking” (see, People v Perel, 34 NY2d 462 [1974]). However, the defendant argues that the investigator did not have the right to selectively choose several items from that wallet, photocopy them, and then return the wallet to the defendant.
In People v Greenwald (90 AD2d 668 [4th Dept 1982]) the police seized various items including a wallet from the defendant. At a later date, the police examined the wallet for evidence, and found a piece of paper belonging to the victims of the crime. The Appellate Division held (at 668) that "When these items were at the station house on his person after a lawful arrest, they were subject to scrutiny and seizure whether during the administrative process of booking or after being placed in a property envelope.”
Since only "unreasonable” searches and seizures are prohibited under State and Federal law, the Appellate Division held that the test is one of reasonableness under the totality of circumstances. "Implicit in the test of reasonableness is a consideration of the individual’s reasonable expectation of privacy * * * 'Once a person or his effects have been reduced to custodial control in the law enforcement system his privacy has been intruded upon’ * * * [consequently the] subsequent search of effects found on the person is then but a lesser-related intrusion incident to the arrest already effected” (People v Greenwald, supra, at 668, quoting People v Perel, 34 NY2d 462, 466 [1974], supra).
The issue is whether the procedure was reasonable. The reasonableness of a search is calculated by weighing the government’s interest advanced by the search against the individual’s expectation of privacy (People v Galak, 80 NY2d 715 [1993]). In People v Sommerville (170 Misc 2d 1024 [Sup Ct, *355 Kings County 1996]) the Supreme Court suppressed evidence found from a daily appointment book in a knapsack belonging to the defendant. However, the court distinguished between the thorough search conducted by the officer in this case to find notes, which were in small print, and the situation where notes would be easily readable, i.e., large print used. In the case at bar, the names on checks were easily readable by the investigator.
FINDINGS
This court finds that Investigator Rauchet’s actions were less intrusive than had he kept the wallet and its contents. If the Investigator could keep the defendant’s wallet and his possessions, as he was being processed after the arrest, the Investigator could examine them to ascertain if the defendant had any contraband (the defendant was a medical doctor), such as drugs, razors, or items which could be used not only to harm the Investigator or the defendant himself, but also other inmates, police officers or correction officers. In addition, the defendant could attempt to destroy other items of evidence. Upon finding no contraband in the wallet, it was given back to the defendant.
This court finds that the Investigator was not searching the wallet as a pretext to search for evidence (see, People v Freema, NYLJ, May 6, 1991, at 25, col 4 [Sup Ct, NY County]). He was merely looking for contraband. The People demonstrated that the Investigator regularly would examine the belongings of persons under arrest as part of the normal booking procedures. Compare this with People v Russo (NYLJ, Apr. 20, 1993, at 26, col 6 [Crim Ct, Richmond County]) where I suppressed the introduction of items discovered in a purse. In that case I found that the items were not discovered during normal booking procedures. Here, upon examining the wallet, rather than "inventory” some of its contents, he chose the less intrusive action of photocopying certain papers and giving the wallet back to the defendant.
While this court acknowledges that it might have been a clearer "inventory search” had the Investigator written on a sheet of paper every item taken from the wallet, the courts do not impose such a burden upon the law enforcement agents at every arrest. In some situations it is clearly faster, and thereby less intrusive, for a quick look and a photocopy of items contained in a wallet. For example, if a wallet contains 10 credit cards, several checks and various licenses and identifica *356 tion cards, it is quicker to photocopy them, rather than to write down each individual item with numerous identity numbers on sheets of paper.
Inventory searches serve three important interests. They: (1) protect an owner’s property while it is in the custody of the police; (2) insure against claims of lost, stolen, or damaged property; and (3) protect the police from danger (People v Sullivan, 29 NY2d 69 [1971]; People v Cammock, 144 AD2d 375 [2d Dept 1988]; see, Kamins, New York Search and Seizure, at 307 [1996 ed]).
In the case at bar, the Investigator’s procedure was reasonable under the circumstances. Since the evidence was legally obtained from the wallet, the fruits of such a search are not poisonous and those names may be used by the People to further their investigation. Accordingly, the witnesses obtained from the names on the checks contained in the defendant’s wallet may testify at trial on the People’s case-in-chief.
Accordingly, the defendant’s motion to suppress the testimony of the witnesses is denied.

. This decision confirms a prior oral decision.

. Investigators of the Office of a District Attorney, which under CPL 1.20 (32) includes the Office of the Attorney-General, are police officers pursuant to CPL 1.20 (34) (g).