# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 68
The People &c.,
   Respondent,
  v.
Rakeem Douglas,
   Appellant.

Stephen R. Strother, for appellant.
Stephen J. Kress, for respondent.

SINGAS, J.:

During an inventory search of defendant's vehicle, conducted pursuant to the New York City Police Department's (NYPD) standardized, written inventory search protocol, the police recovered a firearm. Defendant contends that this protocol, on its face, violates

- 1 -

both the Federal and State Constitutions.  We hold that defendant's arguments fail to overcome the People's proof establishing a valid inventory search protocol.

I.

In October 2015, two NYPD officers observed defendant Rakeem Douglas commit multiple traffic infractions while driving.  The officers stopped defendant, discovered a gravity knife in his pocket (which was illegal at the time), and subsequently arrested him. Defendant and his vehicle were transported to the precinct, where the officers conducted an inventory search of the vehicle, during which they recovered a firearm from the trunk. The police vouchered the firearm, the other items located in the vehicle, and the vehicle itself.

Defendant moved to suppress the firearm, arguing that the NYPD's inventory search protocol was unconstitutional because it gives officers too much discretion in conducting inventory searches and that the searching officers failed to create a meaningful inventory of defendant's items.  At the suppression hearing, the People introduced the NYPD's written inventory search protocol as set forth in section 218-13 of the NYPD Patrol Guide. The protocol instructs officers to first "[s]earch the interior of the vehicle thoroughly," "includ[ing] any area that may contain valuables."  The protocol lists 10 areas within the car that must be searched, such as the glove compartment and trunk, but does not limit the searching officers to those spaces.  Second, section 218-13 directs officers to force open the "trunk, glove compartment, etc. only if it can be done with minimal damage" except in particular situations including where officers "[r]easonably suspect that the item contains weapons, explosives, hazardous materials or contraband."  Lastly, the protocol requires

officers to remove the valuables from the vehicle and invoice, or "voucher," the property on a specifically referenced invoice form. Section 218-13 instructs officers to list property of little value inside the vehicle, "within reason," in their activity log and cross reference the property "to the invoice number covering any valuables removed." Both officers testified that the purpose of an inventory search is, in part, to secure a defendant's items. The arresting officer further testified that it is an officer's duty to safeguard a defendant's recovered items prior to vouchering the items.

Supreme Court denied defendant's motion to suppress, concluding that the NYPD's inventory search protocol was constitutionally sufficient, and the officers acted in accordance with the protocol in executing the inventory search. Defendant subsequently pleaded guilty to criminal possession of a weapon in the second degree and was sentenced, as a second felony offender, to a determinate prison term of 6 years followed by 5 years of postrelease supervision. The Appellate Division affirmed the judgment, agreeing with Supreme Court that "the officers followed a valid procedure for an inventory search of defendant's car" (193 AD3d 622, 622 [1st Dept 2021]). Here, defendant concedes that the officers complied with the challenged protocol and has otherwise abandoned any as-applied challenge.[1]

---

[1] Because defendant poses a facial challenge to the constitutionality of the NYPD protocol, we do not address the particular circumstances of the search in this case, including the span of eleven hours between the discovery of the gun and the completion of the vouchering process or whether the property recovered here was adequately secured or itemized. Although these issues may establish the basis for an as-applied challenge (*see People v Galak*, 80 NY2d 715, 720-721 [1993]; *Illinois v Lafayette*, 462 U.S. 640, 646 [1983] [indicating a standardized procedure for inventorying items "as soon as reasonable after reaching the stationhouse . . . inhibits theft or careless handling" of the relevant property]),

## II.

"Following a lawful arrest of a driver of a vehicle that is required to be impounded, the police may conduct an inventory search of the vehicle" (*People v Padilla*, 21 NY3d 268, 272 [2013]).  An inventory search is "a search designed to properly catalogue the contents of the item searched" (*People v Johnson*, 1 NY3d 252, 256 [2003]).  Because a warrant based on probable cause is not required to execute an inventory search, any inventory search must "be conducted according to a familiar routine procedure" (*Galak*, 80 NY2d at 719, citing *Colorado v Bertine*, 479 US 367, 375 [1987]).  An inventory search procedure must be designed to meet three specific objectives: "to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments" (*Johnson*, 1 NY3d at 256; *see also Lafayette*, 462 US at 646).  The protocol must "limit the discretion of the officer in the field" (*Galak*, 80 NY2d at 719).  There is no requirement that an inventory search protocol be written (*see id.* at 721), and courts will not "micromanage the procedures used to search properly impounded cars" (*People v Walker*, 20 NY3d 122, 127 [2012]).  "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure" (*Bertine*, 479 US at 374).

---

no such challenge is advanced here.  The dissent's discussion of the specific facts of this search (*see* dissenting op at 2-4, 8) is not pertinent to the resolution of the case.

It is the People's burden to establish the validity of the protocol itself—specifically, that the procedure meets those three objectives and sufficiently limits the discretion of searching officers (*see Johnson*, 1 NY3d at 256). The People must also demonstrate that these "particular officer[s] conducted this search properly and in compliance with established procedures" (*id.*, quoting *Galak*, 80 NY2d at 719).

Here, the People sustained their initial burden of demonstrating that the protocol meets "the constitutional minimum" (*Walker*, 20 NY3d at 127; *see People v Padilla*, 21 NY3d 268, 272 [2013]).

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting):

Several officers from the New York City Police Department ("NYPD") arrested defendant, impounded the vehicle he was driving, and took the vehicle to a precinct. There,

- 1 -

in addition to searching defendant, the officers searched the vehicle in the parking lot and placed the property they found inside a plastic bag for 11 hours before preparing vouchers listing the items recovered from the car and defendant's person. The officers conducted the search pursuant to the NYPD's Patrol Guide ("Guide"), which directs an officer to search the interior, and, if done with minimal damage, force the trunk and glove compartment open and remove all valuables and invoice them on separate forms. Whatever may be the virtues of the Guide as adequately directing the physical search of a vehicle, the Guide is wholly inadequate at cabining an officer's discretion regarding the handling of recovered property because it does not instruct the officer on how much time may pass between the search and the invoicing, or instruct them on how and where to safeguard the property. Without such instruction the Guide cannot facilitate the narrow permissible purposes of inventory searches—protecting property, ensuring against theft claims, and protecting officers and others against dangerous items. Therefore, the Guide is unconstitutional on its face.

I dissent.

## I.

Defendant was charged with two weapons counts—based on a firearm recovered from the car and a gravity knife officers observed on his person during the stop—and one count of unlawfully possessing marihuana, which he admitted to at the precinct. As relevant

to this appeal, defendant moved to suppress the gun, claiming that the officers recovered it in violation of his constitutional rights.

At the suppression hearing, the only written protocol the prosecution entered into evidence was section 218-33 of the Guide, titled "Inventory Searches of Automobiles and Other Property." This section describes the purpose of the search as threefold: "To protect property, ensure against unwarranted claims of theft, and protect uniformed members of the service and others against dangerous instrumentalities." The section further instructs officers that, "[w]henever any property comes into the custody of [the NYPD] an inventory search will be conducted" in three steps. First, section 218-33 instructs officers to "[s]earch the interior of the vehicle thoroughly," and provides a nonexhaustive list of interior areas (e.g. glove compartment, console, trunk, air vents, ashtrays). Second, it directs officers to force open the trunk and glove compartment "only if it can be done with minimal damage," unless certain conditions exist not applicable here. Third, officers must "[r]emove all valuables from the vehicle and invoice on a separate Property Clerk Invoice."

Both officers who conducted the underlying search in the precinct's parking lot testified that the Guide requires a search to follow these three steps. One of the officers admitted on cross-examination that the Guide does not require officers to contemporaneously list the items recovered. Both officers testified that they did not compile a contemporaneous list. Instead, they placed the items they removed from the vehicle in a plastic bag along with property recovered from defendant's person and brought the bag into the precinct. Once inside, they placed the bag on the floor. Neither officer

testified that they secured the bag during the 11 hours before one of them finally vouchered the items.

Defendant argues on appeal that the Guide submitted into evidence and described by the officers during the hearing is facially unconstitutional because it furnishes officers with unfettered discretion regarding the recovery and vouchering of property, thereby defeating the purposes of inventory searches.[1] Defendant is correct.

II.

The Fourth Amendment to the United States Constitution and Article I, § 12 of the New York Constitution prohibit "unreasonable searches and seizures" (US Const Amend IV; NY Const, art I, § 12). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant" (*Vernonia School Dist. 47J v Acton*, 515 US 646, 653 [1995]). The warrant ensures that any supporting inferences are "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime" (*Johnson v United States,* 333 US 10, 14 [1948]). Thus, "[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement" (*Riley v California*, 573 US 373, 382 [2014]).

---

[1] Defendant has abandoned his as-applied constitutional challenge and I therefore do not consider whether, regardless of the Guide's directives, the officers failed to conduct the inventory search in a constitutional manner. Of course, to succeed on a facial challenge, defendant "must establish that no set of circumstances exists under which the [Guide] would be valid" (*Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transportation*, 40 NY3d 55, 61 [2023] [internal quotation marks omitted]).

An "inventory search" of persons and automobiles "at a police station" is "now a well-defined exception to the warrant requirement" (*Colorado v Bertine*, 479 US 367, 370-371 [1987]). "[L]aw enforcement officers may conduct an inventory search of an impounded automobile without a warrant, provided the search is conducted according to a 'single familiar standard' or procedure established by the police agency" (*People v Galak*, 80 NY2d 715, 716 [1993] [internal quotation marks omitted], quoting *Bertine*, 479 US at 375; *accord Illinois v Lafayette*, 462 US 640, 648 [1983]; *People v Gonzalez*, 62 NY2d 386, 390 [1984]). "An inventory search is exactly what its name suggests, a search designed to properly catalogue the contents of the item searched" (*People v Johnson*, 1 NY3d 252, 256 [2003]).

"Three specific objectives are advanced by inventory searches: protecting an owner's property while it is in the custody of the police; insuring police against claims of lost, stolen, or vandalized property; and guarding police and others from dangerous instrumentalities that would otherwise go undetected" (*Galak*, 80 NY2d at 718, citing *Bertine*, 479 US at 372, and *Lafayette*, 462 US at 646; *see Florida v Wells*, 495 US 1, 4 [1990]; *South Dakota v Opperman*, 428 US 364, 369 [1976]). Thus, "the hallmark of an inventory search" is "a meaningful inventory list" (*Johnson*, 1 NY3d at 256).

"[A]n inventory search [must] be conducted according to a familiar routine procedure and . . . the procedure [must] meet two standards of reasonableness" (*Galak*, 80 NY2d at 719, citing *Bertine*, 479 US at 375). "First, the procedure must be rationally designed to meet the objectives that justify the search in the first place[,]" and "[s]econd, the procedure must limit the discretion of the officer in the field" (*id.*; *see also Wells*, 495

US at 4 ["(T)wo elements must be examined: first, the relationship between the search procedure adopted and the governmental objectives that justify the intrusion and, second, the adequacy of the controls on the officer's discretion"]). "[I]t is an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably and do not become little more than an excuse for general rummaging to discover incriminating evidence" (*Galak*, 80 NY2d at 719). Moreover, any discretion must be cabined by "standard criteria and [exercised] on the basis of something other than suspicion of evidence of criminal activity" (*Bertine*, 479 US at 375).

Although parties mounting facial challenges typically bear "the extraordinary burden of proving beyond a reasonable doubt that the challenged provision suffers wholesale constitutional impairment" (*Owner Operator Ind. Drivers Assn., Inc.*, 40 NY3d at 61), in the suppression context, the prosecution always has "the burden of demonstrating the validity of the inventory search" (*People v Padilla*, 21 NY3d 268, 272 [2013], citing *People v Gomez*, 13 NY3d 6, 11 [2009]). "All warrantless searches presumptively are unreasonable per se, and, thus, where a warrant has not been obtained," the prosecution has "the burden of overcoming this presumption of unreasonableness" (*People v Jimenez*, 22 NY3d 717, 721 [2014] [internal quotation marks and alterations omitted]).

III.

The prosecution failed to show that the Guide it entered into evidence is facially constitutional. Section 218-33 informs officers of the purposes of inventory searches, and establishes steps for examining the vehicle's interior and invoicing the recovered items

using a specific voucher form. During the hearing, the officers confirmed that the Guide requires each of these steps.

The Guide does not instruct officers on how much time they may take to voucher property after they recover it. In other words, the Guide contains neither an outer limit nor guidance as to what would be a reasonable amount of time within which to complete the inventory. Crucially, the Guide is also silent as to how and where to safeguard the property once removed and prior to vouchering. The Guide thus leaves it wholly to the discretion of the officers to determine how and when to comply with the Guide's three-step process in furtherance of the inventory search purposes.

Contrary to the District Attorney's argument, the burden was on the prosecutor, not defendant, to show that every step of the protocol complies with federal and state mandates given that this was a warrantless search (*see Jimenez*, 22 NY3d at 721). The District Attorney's claim that one of the officers testified that they were under a duty to safeguard the evidence does not save the protocol. The officer's general statement failed to explain *how* an officer would comply with that safeguarding duty under the commands of the protocol. The officer could never establish that connection here because the Guide under which he operated makes no mention of a duty to safeguard. In fact, it never even mentions safeguarding the property at all or how to accomplish this protective task. And the prosecutor failed to provide any other source for this supposed safeguarding duty or a source with uniform standards and adequate directives to cabin an officer's discretion in this regard.

For example, there is no guidance on whether an officer must keep the property in a sealed container and, if so, how to seal it, and whether to keep the container close to them at all times until the vouchering is completed. There is no information on what areas in a precinct are appropriate for storage should the officer be delayed in completing the search and property vouchers. And there is no directive as to what constitutes an officially-recognized, adequate reason to delay completion of this warrantless search.[2] In sum, the Guide does not cabin the discretion an officer may exercise once they have searched the vehicle and recovered property. Thus, the prosecution failed to meet its burden of showing how the Guide "clearly limit[ed] the conduct of individual officers" (*Galak*, 80 NY2d at 719) according to "standard criteria" (*Bertine*, 479 US at 375).

The NYPD's facially unconstitutional protocol here permitted a search and vouchering that took 11 hours to complete in two separate locations.[3] During several of those hours, the officers left the recovered property in a plastic bag somewhere on the floor of the precinct. The officers failed to prepare a contemporaneous list of the property removed from the vehicle and the list they eventually produced fails to distinguish between the property removed from the vehicle and items recovered from defendant's person. At

---

[2] Regardless of whether routine police matters are a basis to stop an unfinished inventory search, no policy was submitted at the suppression hearing instructing an officer on how to determine which non-emergency matters justify interruption of the search and vouchering.

[3] The majority misunderstands my purpose in making these observations (*see* majority op at 3 n 1). Although the "specific facts of this search" of course have no bearing on this purely facial challenge (*id.*), the prosecution's reliance on the Guide to defend this unsupervised and temporally limitless search reinforces the Guide's facial unconstitutionality.

the hearing, the officer relied on his recollection of where each item was recovered. As a consequence, the property was vulnerable to destruction, theft and tampering— undermining the purpose of the inventory and creating the opportunity for the type of mishandling that the Guide is designed to avoid.

Defendant contends that the Appellate Division tolerates significant delays in completion of vehicular inventory searches. As an example, he cites *People v Echevarria*, where the Appellate Division concluded, without analysis, that "a delay in completing the inventory procedure was satisfactorily explained" (173 AD3d 638, 639 [1st Dept 2019]). The case does not obviously illustrate defendant's point, but even so, it is not clear from this one decision that a pattern has developed in our intermediate appellate and trial courts of setting the bar below the constitutional floor. While our courts should not micromanage the NYPD, ensuring compliance with the law is not micromanagement; it is judicial oversight, a distinction the majority elides by approving this protocol.

IV.

The law permits warrantless inventory vehicle searches of impounded vehicles for limited purposes of protecting property, ensuring against theft claims, and protecting officers and others against dangerous items. The prosecution here failed to establish that the Guide, on its face, adopts a constitutional method for accomplishing these limited objectives.

Order affirmed. Opinion by Judge Singas. Chief Judge Wilson and Judges Garcia, Cannataro, Troutman and Halligan concur. Judge Rivera dissents in an opinion.

Decided October 24, 2023