People v Mitchell (2024 NY Slip Op 51715(U))

[*1]

People v Mitchell

2024 NY Slip Op 51715(U)

Decided on November 19, 2024

County Court, Albany County

Ackerman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 19, 2024
County Court, Albany County

The People of the State of New York,

against
Dontie Mitchell, Defendant.

Indictment No. 70249-24

For the People
P. DAVID SOARES
Albany County District Attorney
Jessica Blain-Lewis
Assistant District Attorney 
Albany County Judicial Center
Albany, New York 12207
For the Defendant
STEPHEN W. HERRICK
Albany County Public Defender
Rebekah B. Sokol
Assistant Public Defender 
112 State St., Rm. 203 
Albany, New York 12207

Andra Ackerman, J.

On February 2, 2024, the defendant was charged by superseding indictment with attempted murder in the second degree, in violation of Penal Law §§ 110/125.25 (1), and criminal possession of a weapon in the second degree, in violation of Penal Law § 265.03 (3). [*2]On August 22, 2024, a Mapp, Huntley, Dunaway, and Rodriguez [FN1]
hearing was held, pursuant to the Court's April 30, 2024 decision and order.
At the hearing, the People called as witnesses: Cohoes Police Officer Jamie Kelly, Cohoes Police Detective Andrew Britt, Crime Analyst Brandon Frangella, New York State Police (NYSP) Senior Investigator Jason Deluca, NYSP Trooper Kenneth Ahigian, and NYSP Investigators William Michel, Ryan Munks, and Sean Kane. The People introduced multiple pieces of evidence (People's 1-19). The defense called no witnesses and submitted no evidence.
Based on the credible hearing testimony and evidence, the Court makes the following findings of fact.
Findings of Fact
On August 11, 2023 at approximately 10:39 p.m., Cohoes Police responded to a shots fired call at the intersection at Main Street and Schuyler Street in the City of Cohoes, County of Albany, State of New York. Upon arriving, officers observed the victim, Shieer Legget, unresponsive in the street. He was later pronounced dead at Albany Medical Center.
Police reviewed surveillance footage from a nearby store, located 125 Main Street, which showed an argument that escalated into a shootout. At the scene, police found three groupings of shell casings, indicating the shooters' locations.
Police pulled still images of the three shooters and created a posting through the Capital Region Crime Analysis Center (CRCAC) seeking to identify them. On August 12, 2023, Witness 1 identified the defendant by name as the individual depicted in image #3 of the CRCAC posting. Witness 1 knew the defendant personally and described his vehicle as a silver Honda. Two days later, Witness 2 also identified the defendant as image #3 from the CRCAC posting. Witnesses 3 and 4, who were on scene during the shooting, provided a description of the person who fired a weapon first, which matched that of the defendant as depicted in image #3 of the CRCAC posting.
City surveillance video showed a 2019 Silver Honda Accord with plate number KVP1961 arrive in the area just before the shooting and leave immediately thereafter. The vehicle was registered to the defendant.
Cohoes Police provided the NYSP with a picture of the defendant, the make and model of his car, and information about his involvement in the shooting. On August 14, 2024, NYSP Trooper Ahigian observed the defendant driving his 2019 Silver Honda Accord on Interstate 787 in the City of Watervliet. Trooper Ahigian and his partner Inv. Michel conducted a felony stop of the vehicle. The defendant and his 13-year-old passenger were removed from the car, handcuffed, and searched.
While the defendant and his passenger were detained on the side of the road, Trooper Ahigian and Inv. Michel searched the vehicle. Body camera footage shows Trooper Ahigian rummaging through the defendant's car, including the center console, the trunk, bags, and the spare tire well. According to Trooper Ahigian, he was "looking for any further contraband. A firearm. Anything illegal." He said that, while it is standard to do an inventory search if a vehicle is going to be towed, "this vehicle was . . . possibly used leaving a homicide scene with a [*3]possible homicide suspect, so at that point, I was going to search the vehicle for any weapons or contraband." The search uncovered several electronic devices, including a laptop, multiple cell phones, an SD card, and a black USB flash drive.
The juvenile passenger was arrested for narcotics possession, and the defendant was detained and transported to the Cohoes Police Department in connection with the homicide investigation. While roadside and during transport, the defendant asked several questions and made several spontaneous statements to police.
Sgt. Britt prepared search warrant applications seeking to further search the defendant's vehicle and the various electronic devices found therein. On August 15, 2024, a Cohoes City Court judge signed the warrants.
Sgt. Britt testified that the warrant to search the electronics was without temporal limitation and, by pursuing and executing the warrant, police were looking for anything that might be potentially relevant, including texts, calls, pictures, and locations. He said: "it's very important to open up the entire investigation into every aspect . . . possible that may depict events that happened just prior, just after, or it could be years prior that might provide insight as to why a certain event occurred, how a certain event occurred, and shed more light on our investigation."
On August 25, 2024, a Cohoes City Court judge signed a warrant permitting a continued search of the vehicle, including its central processing unit. Pursuant to the warrants, the defendant's car was further searched, and the electronic devices were submitted to the NYSP lab for analysis.

The Defendant's Contentions
The defendant argues that the roadside search of the defendant's car by the NYSP was a warrantless, non-inventory search; the search warrant applications were overly broad and insufficient; and the searches executed on the electronics were overboard, violative of the search warrant directives, and based in part on a search warrant that has never been provided to the defense.

 Conclusions of Law
Inventory Search
"Following a lawful arrest of a driver of a vehicle that is required to be impounded, the police may conduct an inventory search of the vehicle" (People v Padilla, 21 NY3d 268, 272 [2013]). "An inventory search is 'a search designed to properly catalogue the contents of the item searched'" (People v Douglas, 40 NY3d 385, 388-389 [2023], quoting People v Johnson, 1 NY3d 252, 256 [2003]).
"Because a warrant based on probable cause is not required to execute an inventory search, any inventory search must 'be conducted according to a familiar routine procedure'" (id., quoting People v Galak, 80 NY2d 715, 719 [1993]). "An inventory search procedure must be designed to meet three specific objectives: to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments" (id. [internal quotation marks and citations omitted]).
"It is the People's burden to establish the validity of the protocol itself—specifically, that the procedure meets those three objectives and sufficiently limits the discretion of searching officers" (id.). The People must also demonstrate that the officer conducted the search properly and in compliance with established procedures (id.). In short, "law enforcement officers may conduct an inventory search of an impounded vehicle without a warrant, so long as the search is conducted according to 'reasonable police regulations relating to inventory procedures administered in good faith'" (People v David, 41 NY3d 90, 100 [2023], quoting Colorado v Bertine, 479 US 367, 374 [1987]).
Assuming, without deciding, that the proffered inventory search policy is reasonable, the People failed to prove that Trooper Ahigian complied with that policy and conducted a valid inventory search in good faith. It is clear from Trooper Ahigian's hearing testimony that he searched the car looking for contraband, weapons, or anything illegal—not to catalogue its contents. This completely undermines the purpose of the inventory policy requirement: to ensure that an inventory search does not "become little more than an excuse for general rummaging to discover incriminating evidence" (People v Galak, 80 NY2d 715, 719 [1993]), as was apparently the case here.
Nor was the search justified under the officer safety exception to the warrant requirement. The defendant was cooperative and compliant throughout the interaction with police, and he and his passenger were handcuffed, outside of the car, and surrounded by multiple officers during the search (see People v Scott, 216 AD3d 552 [1st Dept 2023]).
However, the Court finds that the evidence recovered from the roadside search of the defendant's vehicle is admissible under to the inevitable discovery doctrine (see People v Turriago, 90 NY2d 77, 85-87 [1997]; People v Auleta, 82 AD3d 1417, 1420 [3d Dept 2011]). Had Trooper Ahigian not uncovered and collected the various electronic devices during his initial search of the car, the evidence almost certainly would have fallen lawfully into the hands of police in the course of a constitutionally valid inventory search routinely conducted under these circumstances, or pursuant to the subsequent, validly issued August 15, 2024 warrant to search the defendant's vehicle. Accordingly, the defendant's motion to suppress based on the invalid inventory search is denied.
The Search Warrants
The Fourth Amendment requires that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." To establish probable cause for the issuance of a search warrant, the warrant application must demonstrate that there is sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place" (People v Montgomery, 229 AD3d 899, 904-905 [3d Dept 2024] [internal quotation marks and citations omitted]).
A search warrant may not be issued unless the application particularly describes the place to be searched and the things to be seized, specifically enough to leave no discretion to the executing officer (see People v Darling, 95 NY2d 530, 537 [2000]). However, the Court of Appeals has held that "search warrants, which are composed not by lawyers but by police officers acting under stress, are not to be read hypertechnically and may be 'accorded all reasonable inferences'" (People v Robinson, 68 NY2d 541, 551 [1986], citing People v Hanlon, 36 NY2d 549, 559 [1975]). "A search warrant approved by a magistrate is presumed valid and [*4]will be upheld if the warrant application demonstrates that there was sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place" (People v Brooks, 152 AD3d 1084, 1086 [3d Dept 2017] [internal quotation marks and citations omitted]).
As an initial matter, the August 15, 2024 and August 25, 2024 warrants authorizing searches of the defendant's vehicle and its internal computer/central processing unit were valid. They were largely specific and based on sufficient probable cause (see People v Alexander, 207 AD3d 878, 881 [3d Dept 2022]; People v Herron, 199 AD3d 1476, 1479 [4th Dept 2021]).
The defendant argues that the warrant to search the various electronic devices found in his vehicle was overbroad and lacked particularity. A warrant is overbroad if it "seeks specific material as to which no probable cause exists" (People v Alexander, 207 AD3d 878, 880 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]). "By contrast, a warrant lacks particularity when it is not 'specific enough to leave no discretion to the executing officer'" (id., quoting People v Gordon, 36 NY3d 420, 429 [2021]).
While the electronics warrant application provided detailed information about the defendant's alleged involvement with the August 11, 2023 shooting, it contained no case-specific facts pertaining to the electronics themselves. Rather, it contained general statements, like: "Electronic devices and storage devices are commonly used to arrange illegal activities involving violent crimes . . . via verbal and SMS communications," and "people who conduct illegal activities involving violent crimes . . . [do not usually], if ever, completely dispose of their conversations, messages, and pictures as they treat these materials as 'transactions' and are proud of their illegal conduct."
These sorts of general statements, while seemingly based on "common sense and every day experience," do not support a reasonable belief that evidence connecting the defendant to the shooting, or that would provide context for his involvement, may be stored on the devices (see People v Boothe, 188 AD3d 1242, 1243 [2d Dept 2020]; People v Jemmot, 164 AD3d 953, 954 [3d Dept 2018]). The mere assumption that electronics may contain evidence of a crime—no matter how sensible that assumption may be—does not suffice to establish probable cause, especially considering the significant privacy interests at stake (see People v Jemmot, 164 AD3d 953, 954 [3d Dept 2018] ["common sense alone does not establish probable cause to search a person's cell phone"], citing Carpenter v United States, 138 S Ct 2206, 2217 [2018]; Riley v California, 573 US 373 [2014]; see also People v Perez, 72 Misc 3d 310, 314 [Sup Ct, Kings County 2021]).
Furthermore, the electronics warrant lacked particularity insomuch as it provided unfettered discretion in searching the electronic devices, without any temporal limitation or regard to the types of files to be searched (see People v Williams, 79 Misc 3d 809, 815 [Sup Ct, Albany County 2023]).
In light of the foregoing, any evidence found on the electronic devices must be and is hereby suppressed.
This shall constitute the decision of this court.
Dated: November 19, 2024
Albany, New York
HON. ANDRA ACKERMAN
Albany County Court Judge

Footnotes

Footnote 1:The defendant's identity is no longer in dispute and the defense is not pursuing further any Wade/Rodriguez identification issues.